MOISE, Justice.
 

 We granted writs in this case to review a judgment of the Court of Appeal, which reversed the judgment of the district court, sustained the plea of prescription, and dismissed plaintiff’s suit. 75 So.2d 389, 402.
 

 On December 17, 1952, plaintiff filed suit for workmen’s compensation against the Cabot Carbon Company, Inc., alleging that he suffered severe back injuries — a lumbosacral strain — while performing services in the course of his employment on December 18, 1951.
 

 The trial court found, as did the Court of Appeal, that plaintiff was totally disabled.
 

 At the close of the case on the merits defendant filed a plea of prescription, and in
 
 *944
 
 reversing that plea the Honorable Court of Appeal held:
 

 “We believe, as the Trial Judge so stated in his opinion, that the plaintiff was illiterate and that
 
 he did his work as long as he could
 
 and was not a malingerer and is not crazy and wouldn’t discontinue his work and lose the wages he was earning, as well as the other benefits,
 
 unless he was totally disabled,
 
 but we are afraid that his desire to support his family and continue on his job serving his master has militated against his right to successfully prosecute a claim for compensation for disability occurring more than one year prior to the time he filed his suit, * * (Italics ours.)
 

 We believe that the Honorable Court of Appeal was in error in dismissing plaintiff’s suit on a plea of prescription on the following facts, to which we will apply the law.
 

 Plaintiff was in defendant’s employ for seven years, and was earning approximately $400 a month. He had a wife and six minor children — seven urgent and insistent reasons why he should continue to earn his salary of $400 per month in lieu of 'workmen’s compensation.
 

 Plaintiff wrenched his back on December 12, 1951, while rolling a two hundred pound barrel of oil. He visited his personal physician, Dr. R. E. Dupre, on December 15 and 18, 1951, and was attended by the company’s physician, Dr. Reed Fontenot, on December 21, 1951. Defendant issued authorizations for him to see both of these physicians. His personal physician prescribed a lumbosacral belt, and the company physician diagnosed his injury as a lumbosacral strain.
 

 Plaintiff was able to continue in his employment, but, because of the continuance of the work which produced total disability on June 5, 1952, he could no longer perform the work.
 

 . The question posed is: When did prescription commence?
 

 (a) Was it-at the time of the injury, which did not deter plaintiff from working; or,
 

 (b) Was it from the date which produced the aggravated condition of a permanent disability?
 

 On June 5, 1952, plaintiff complained that he was suffering the most intense pain and could no longer continue in his work. One of the officials of the defendant company suggested that he see a physician. Dr. R. E. Dupre treated him for prostatitis and neuritis and discharged him on June 30, 1952. During this time, through November 18, 1952, plaintiff received insurance benefits. Defendant contends that such were sick benefits. Plaintiff contends it was compensation that in itself interrupted prescription.
 

 At defendant’s suggestion, Dr. H. Theodore Simon of New Orleans, an orthopedic surgeon, examined plaintiff on June 18, 1952, and found him to be suffering fj-om a
 
 *946
 
 lumbosacral sprain. He recommended changes in the medical belt he' was wearing.
 

 In July of 1952, Dr. Fontenot, the company physician, commenced heat treatment on the plaintiff.
 

 In November 1952, plaintiff returned to work, but he continued to have severe back pains. As he was given heavy duties he was no longer able to continue this work, and on December 17, 1952, he filed this suit for compensation.
 

 Plaintiff was examined by a number of neuro-surgeons and orthopedic surgeons after the suit was filed. Their testimony has no relevance to the issue at this time. The case is here for decision on the question of prescription — not on the merits.
 

 Defendant contends that the injury and disability developed on the happening of the accident, December 12, 1951; that it was continuous, because it manifested itself and plaintiff sought medical aid and continued to work. Must plaintiff now be penalized because he tried to perform his duty to support his loved ones?
 

 Plaintiff continued tc> do his work and was earning $400 per month. If he could work, it is evident that his injury was not a total disability. It seems reasonable that the continuation of heavy duties superimposed on him brought about the result from which he now complains.
 

 LSA-Revised Statutes 23:1209 reads:
 

 “In case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter or unless within one year after the accident proceedings have been begun as provided in Parts III and IV of this Chapter. * * * Also, where the injury does not result at the time of, or develop immediately after the accident,
 
 the limitation shall not take effect until the expiration of one year from the time the injury develops,
 
 but
 
 in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident.”
 
 (Italics ours.)
 

 In the case of Dyer v. Rapides Lumber Company [In re Dyer], 154 La. 1091, 98 So. 677, 679, we held as follows:
 

 “ * * * workmen’s compensation statutes are intended to take the burden of the waste of life and limb
 
 off the shoulders vf workingmen and place it upon those of their employers, zvho in turn would distribute it amongst the consumers of the product. And in order to give such statutes the full benevolent effect intended by the lawmaker, it is essential that courts should give them a liberal interpretation.
 
 And such has been the attitude of this court from the beginning towards our own statute, as we have just had occasion to
 
 *948
 
 say in Lemieux v. Cousins, [154 La. 811] 98 So. 255, this day decided."
 

 Therefore, when applying the law to the facts of the instant case, we believe that the plea of prescription was properly overruled by the district court and improperly sustained by the Court of Appeal. Such is made manifest by the pronouncement in the case of Mottet v. Libbey-Owens-Ford Glass Company, 220 La. 653, 57 So.2d 218, 219. In that case plaintiff was injured on January 27, 1946, while lifting heavy glass. He consulted his own physician who diagnosed the trouble as neuritis. While on vacation in September, 1946, plaintiff visited Johns-Hopkins Hospital in Baltimore, Maryland, and was examined by an orthopedic physician. This examination revealed a partial thinning of the fifth lumbar intervertebral space. On his return to work, he was changed to light glass work on his request. On March 11, 1947, he quit work, being permanently disabled. This Court overruled the plea of prescription filed by defendant to plaintiff’s petition of August 4, 1947, and stated:
 

 “ * * * The Workmen’s Compensation Act was amended by Act 29 of 1934 so as to provide that the prescription or peremption should not commence until the injury had developed. In our opinion this amendment was designed to take care of cases similar to the one herein involved. From the very wording of this amendment; an employee who receives an injury flowing from an accident that later develops into disability is excepted from the general rule and
 
 his right of action is not perempted until one year after the injury has developed.
 
 In this case the injury
 
 did not develop into total disability until March 11,1947, at which time the plaintiff could no longer pursue his trade as a glass cutter. For us to say that he was disabled to perform the duties of his trade prior to that time-would be mere conjecture on our part because he had, in fact, continued to perform the duties of his trade until that date.
 
 His suit was filed on August 4, 1947, a short time after he
 
 became
 
 disabled, and within a year from that time. Such being the case the plaintiff’s suit was timely filed and the plea of peremption cannot be maintained.”(Italics ours.)
 

 Even though plaintiff in the instant case-consulted doctors, both company and private, he continued working until June 5, 1952. It was then that the injury developed to the point of total disability, and at that time prescription had not run on the filing of the suit.
 

 For the reasons assigned, the judgment of the Court of Appeal, maintaining the plea of prescription, is reversed and set aside; the writ is now made peremptory; and the case is remanded to the Court of Appeal, First Circuit, for consideration on the merits.