347 So.2d 13 (1977)
Jo Ann S. BURLEIGH, Plaintiff and Appellant,
v.
ARGONAUT INSURANCE COMPANY et al., Defendant and Appellee.
No. 5946.
Court of Appeal of Louisiana, Third Circuit.
May 16, 1977.
Rehearing Denied June 24, 1977.
*14 Vance R. Andrus, Lafayette, for plaintiff and appellant.
Allen, Gooch & Bourgeois by Paul J. Breaux, Lafayette, for defendant and appellee.
Before HOOD, CULPEPPER and STOKER, JJ.
CULPEPPER, Judge.
In this workmen's compensation case the trial judge sustained defendant's exception of prescription and dismissed plaintiff's suit. Plaintiff appealed.
The issue is whether plaintiff's injury "developed" within one year prior to the time she filed this suit.
The facts, as alleged in plaintiff's petition, and as shown by her testimony at the hearing on the exception of prescription, are that plaintiff was employed as a practical nurse by the Acadia-St. Landry Hospital. While she was handling a patient on August 10, 1974, the patient made an unexpected move and something "snapped" in plaintiff's back, causing her great pain. Plaintiff kept on working, but the pain continued and intensified, and on August 14, 1974 she had to leave work because of pain and numbness in her back and legs. On August 16, 1974, she was admitted to a hospital where she was treated for five days. She returned to the same employment on September 16, 1974 and although she was able to perform her duties as a practical nurse, she continued to have pain and discomfort.
In November of 1974, she stopped working temporarily because she married on December 24, 1974. She did not return to work until June of 1975, at which time she was employed by Professional Health Services, performing essentially the same duties as a practical nurse which she had performed at the hospital, but she worked in the homes of the patients. She continued to work in this new employment until March 11, 1976. At that time, due to the increased pain in her back and leg, she became unable to handle the patients.
*15 She testified she had been seeing Dr. Savoy, a chiropractor, and Dr. Frederick Mayer, a specialist in orthopedics, during the time she had been working for Professional Health Services. There is no evidence in the record as to the diagnosis or treatment by these physicians. However, plaintiff did testify that she was seen by Dr. Mayer as a result of appointments made for her by the defendant insurer. Dr. Mayer referred her to Dr. Oberdyke, who in turn sent her to Dr. Osborne, an orthopedic specialist in Shreveport. This latter physician treated her back condition with "electrical stimulation". According to plaintiff's testimony, two electrodes were inserted in her back and two down her left leg, and these were connected to a battery which she wears around her waist. She says this treatment relieves her back pain.
About the end of March, 1976, plaintiff obtained employment in the office of Dr. Bergeron, an allergist. This new employment in the office did not require that she handle patients or use her back. She says she is unable, because of the pain in her back and her leg, to return to employment as a practical nurse requiring the lifting of patients.
There is no evidence in the record of any expert medical opinion or treatment, except that related by plaintiff in her testimony. Plaintiff's testimony is uncontradicted.
The prescriptive question involved is the development of injury rule set forth in LSA-R.S. 23:1209. This statute provides in pertinent part that all claims for workmen's compensation payments prescribe one year after the accident, except that "where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident."
Plaintiff filed the present suit on July 1, 1976, which was more than one year but less than two years from the date of the accident.
In Hebert v. Hartford Accident and Indemnity Company, 331 So.2d 222 (La. App. 3rd Cir. 1976), writ refused, La., 334 So.2d 229, for the reason "On the facts found, no error of law.", we construed the development of injury rule in a very similar factual situation. The majority found the following facts: Mr. Hebert, a policeman, injured his right knee in July of 1973 when he fell from his motorcycle. He was immediately disabled, was hospitalized twice and then treated on an outpatient basis until September of 1973, when he was released to resume his employment. He returned to work, first on a light duty basis and later to the full duties of a patrolman, which he was performing at the time he was injured. He continued working as a patrolman until March of 1974, and all during this time he was having intermittent pain, swelling and locking of the knee following strenuous activity. Finally, on March 12, 1974, while on patrol duty, his knee became extremely swollen and he had to quit work. There was no new aggravating injury. Suit was filed on February 13, 1975, which was more than a year from the date of the accident and his initial disability but was within a year from the date he finally had to quit working on March 12, 1974, and was within two years from the date of the accident. Although the writer of this review dissented on the facts, the court was unanimous in its holding as to the applicable law. We held that under the jurisprudence, beginning with Mottet v. Libbey-Owens-Ford Glass Company, 220 La. 653, 57 So.2d 218 (1952), the "development of injury" signifies something more than the initial occurrence of pain. The injury does not develop until the employee is disabled and this disability becomes manifest either to the injured employee or his employer. We then stated the rationale of the cited cases to be an effort to encourage rather than penalize an employee who seeks to continue working, despite what later turns out to be disability. In the situation where there is an initial manifestation of injury and of disability, but the employee is able to return to *16 work, a new period of prescription of one year will nevertheless commence where there is either a new injury or a disabling remanifestation of the symptoms of the initial injury.
Within a few months after our decision was rendered in Hebert, our brothers of the Second Circuit reached the same conclusion in Harris v. Seaboard Fire & Marine Insurance Company, 337 So.2d 262 (La.App., 2d Cir. 1976), writ refused, La., 339 So.2d 853, for the reason "No error of law." In Harris the rule is succinctly stated as follows:
"In a workmen's compensation suit for disability benefits, the disabling injury does not fully develop until the workman cannot perform his duties and the prescriptive period does not commence to run until discontinuance of employment, subject to the requirement that suit be filed within two years after the date of the accident. In a suit for total and permanent disability benefits the disabling injury does not develop until the workman becomes finally unable to perform his duties and the prescriptive period does not commence to run until the workman's employment is finally discontinued. If the workman is temporarily unable to perform his duties or temporarily ceases working, the prescriptive period does not commence."
Applying these rules to the above stated facts, as disclosed by the pleadings and by the testimony of plaintiff at the hearing on the exception of prescription, the disabling injury did not fully develop until plaintiff finally became unable to perform her duties in March of 1976. Prescription did not commence at the time of the initial manifestation of the injury and disability immediately following the accident. Plaintiff does not contend that there was any new aggravation of the initial injury. But her uncontradicted testimony is that after returning to work she continued to work with pain in her back and leg until on March 11, 1976 she finally had to terminate the strenuous duties she was performing. Under these circumstances, prescription did not begin to run until March 11, 1976, and this case filed on July 1, 1976 was within one year from the development of injury.
The defendant relies on Guillory v. Maryland Casualty Company, 227 So.2d 620 (La. App. 3rd Cir. 1969) and several other cases involving similar facts. In Guillory, the initial injury was on August 7, 1967 when plaintiff fell and twisted his knee. He quit work on September 1, 1967, which was about three weeks after the accident, and went to teach in a high school. The facts found were that the injury and the disability were manifest and developed at the time he quit work. Plaintiff did not consult a physician until November 13, 1967, at which time the diagnosis was that he was disabled. He filed suit on October 31, 1967, which was more than a year from the time he quit work, but was less than a year from the time the physician made the diagnosis of disability. The court held the prescription of one year commenced from the time plaintiff had to quit work, rather than the time the physician diagnosed the disability. Thus, Guillory is distinguished from the present case, in which suit was filed within one year from the time plaintiff finally became disabled and left her employment.
Defendant also argues that the decision by the trial judge is based on controversial findings of fact and the trial court's evaluation of the credibility of the plaintiff. The only findings of fact by the trial judge are contained in a brief statement dictated into the record at the conclusion of the hearing on the exception of prescription. The judge states that although he finds plaintiff is disabled at the present time, he had no alternative but to follow the law as established by the Third Circuit Court of Appeal. It may be that at the time the trial judge decided the present case on September 23, 1976, he was not aware of the very recent decision by this Court in Hebert v. Hartford, supra. Nevertheless, under the facts of the present case and the applicable law as stated in the Hebert case from the Third Circuit and in the Harris case from the Second Circuit, the exception of prescription must be overruled.
*17 For the reasons assigned, the judgment appealed is reversed and set aside. The exception of prescription and/or peremption filed by the defendant is overruled. The case is remanded to the district court for further proceedings in accordance with law and the views expressed herein. All costs of this appeal are assessed against the defendant-appellee.
REVERSED AND REMANDED.
HOOD, J., concurs in the result.