DOMENGEAUX, Judge.
This is a workmen’s compensation case involving the prescriptive provision of the Workmen’s Compensation Law, La.R.S. 23:1209. Virgie Bolden, plaintiff, was injured on May 23, 1974. Suit was filed against the employer’s insurer on March 24, 1976.
Plaintiff was engaged in the loading, cutting, and hauling of pulpwood for the Bennett Timber Company, Inc., in Beauregard Parish. Although he operated his own truck and employed other laborers, no issue is raised concerning the employment relationship.
At trial counsel stipulated to the following facts:
*493 1. Plaintiff sustained an accidental personal injury on May 23, 1974, in the course and scope of his employment;
2. Plaintiff’s injury was diagnosed by Doctor Henry S. Carter, as a lumbar sacral sprain;
3. Plaintiff was hospitalized beginning May 23, 1974, and ending June 8, 1974;
4. Plaintiff was discharged as cured by Doctor Carter on August 17, 1974;
5. Plaintiff was paid weekly compensation benefits of $45.50 beginning May 23, 1974, and ending August 21, 1974;
6. Plaintiff’s medical expenses for care and treatment for the injury were paid, the last payment being on September 27, 1974; and
7. Plaintiff did not return to work for the employer after the accident of May 23, 1974.
The present controversy arose when Bol-den attempted to mow lawns in the fall of 1974 and began to experience pain in the cervical region of his back. Although plaintiff continually complained of pain in the lower back the cervical pain did not arise until after Doctor Carter discharged plaintiff. In November of 1974 this pain became so severe that plaintiff reported it to Doctor Carter. Doctor Carter undertook conservative treatment.
Pain in the cervical region of the back apparently continued and Doctor Carter was consulted again in April of 1975. Doctor Carter continued conservative treatment, whereupon plaintiff went to another physician in Hattisburg, Mississippi. Doctor McCarthy, the Hattisburg physician, referred plaintiff to Doctor Robert Smith, a neurosurgeon in Jackson, Mississippi.
Doctor Smith examined plaintiff on September 5, 1975. He performed a myelo-gram and determined that surgery was indicated. A decompressive laminectomy was performed on September 26, 1975, and at this time it was discovered that plaintiff had a small herniated disc at the 4th and 5th level of the vertebral column.
Plaintiff brought this suit against the employer’s compensation insurer, Georgia Casualty and Surety Company, alleging that by virtue of the herniated disc he is totally and permanently disabled from the date of the original accident. He seeks maximum compensation benefits, maximum medical expenses, and an increase in the compensation payments already made.
Suit was filed on March 24, 1976, and defendant raised the plea of prescription, claiming that suit was filed more than one year after the last compensation payment.
The trial court referred the exception to the merits. After trial the court sustained the plea of prescription. Plaintiff appealed. We affirm.
The threshold issue raised by plaintiff on appeal is whether the trial judge was correct in finding the claim prescribed.
The prescriptive periods for workmen’s compensation claims are contained in La. R.S. 23:1209. Generally, claims prescribe one year from the date of the accident or one year from the date of the last compensation payment. There are, however, exceptions, one of which is known as the development of injury rule. In pertinent part, the statute states:
“. . . [WJhere the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident.”
Although there is an abundance of cases interpreting this exception, three cases are continually cited in the reports: Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218 (1952); Johnson v. Cabot Carbon Company, Inc., 227 La. 941, 81 So.2d 2 (1955), and Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522 (1956). These cases state the basic features of the rule. The phrase, “the limitation shall not take effect until the expiration of one year from the time the injury develops” means that *494 there is no running of prescription until such time as an employee can no longer perform the duties of his employment. As the court stated in Wallace v. Remington Rand, Inc., supra:
“. . . Development, as applied to a compensable injury, signifies something more than occurrence and pain. It connotes the time when disability to perform work becomes manifest either to the injured employee or his employer.” [Italics by the court]
The exception has a beneficent purpose. It is clear from the plain wording of the statute that the Legislature sought to give an employee who only realizes at some point in time after the occurrence of an accident that he has sustained an injury, one year in which to file suit, provided suit is filed within two years from the date of the accident. It usually operates to avoid penalizing an injured employee who attempts to continue to work or who returns to work after sustaining a compensable injury which is unknown to the employee. See, e. g., Harris v. Seaboard Fire & Marine Insurance Company, 337 So.2d 262 (La.App. 2nd Cir. 1976); Hebert v. Hartford Accident & Indemnity Company, 331 So.2d 222 (La.App. 3rd Cir. 1976); Payne v. Travelers Insurance Company, 299 So.2d 913 (La.App. 3rd Cir. 1974).
We must determine in this case whether there was a development of the injury, and, if so, the time that this injury became manifest.
I. DEVELOPMENT OF THE INJURY
It is apparent that the injury sued upon did not develop until some time after the accident. The report of Doctor Carter, filed into evidence, stated that plaintiff’s initial injury was diagnosed as a lumbo-sacral myofascia strain for which he was treated and subsequently discharged as cured on August 17, 1974. This report notes that at the time of discharge there were no complaints of pain in the cervical region of the back. Doctor Carter states that plaintiff only complained of pain in this region at the examination in November of 1974.
In addition to the report of Doctor Carter, plaintiff stated that he was unaware of any pain in the cervical region of his back at the time of discharge. Plaintiff’s testimony clearly indicates that this pain began when he attempted to mow lawns around November of 1974, at which time he reported the pain to Doctor Carter. It was this symptom that ultimately led to Doctor Smith’s diagnosis and surgery in September of 1975, which revealed the herniated disc. Since this did not arise until after plaintiff’s initial discharge, we agree with the trial court that there was a development of the injury at some point after the accident.
Defendant argues, however, that even if there was a development of a subsequent injury the employee in this case cannot assert the exception because he did not return to his former employment. It apparently maintains that if an employee receives an initial injury following an accident and does not return to his employment, the initial injury should be considered as continually manifesting itself and the development of a second injury would be irrelevant for purposes of the exception. It contends that since Bolden did not return to his employment because of pain in his lower back, Bolden’s injury continually manifested itself and the subsequent development or manifestation of an injury in the cervical region of the back is of no consequence.
We reject defendant’s argument. It attaches too much significance to Bolden’s failure to return to work with the timber company. Continuation or resumption of employment may be highly persuasive to a court in indicating that an injured employee was unaware of a compensable injury or that an injured employee’s injuries were latent and did not develop until some time after the accident, but they are not necessarily controlling. An employee who sustains an accident may decide to cease employment, even though he is capable or feels that he will be capable of continuing employment, and, if a subsequent injury manifests itself after the accident, he may still sue provided suit is brought within one year *495 following the manifestation and within two years from the date of the accident. The important factor is that an injured employee is not aware that he cannot pursue gainful employment.
In the instant case Bolden testified that he did not feel capable of returning to his original employment with the Bennett Timber Company. He did, however, attempt to perform some duties as a grass cutter. Although the trial court found that this was not a return to gainful employment, it does indicate that plaintiff thought he would eventually be able to work. Bolden’s failure to return to the timber company does not preclude application of the development of injury rule.
II. TIME OF MANIFESTATION
The trial court made the factual determination that plaintiff's cervical injury became manifest in November of 1974, when Bolden consulted Doctor Carter. Accordingly, the claim prescribed in November of 1975, and, therefore, suit filed on March 24, 1976 was untimely.
Plaintiff argues, however, that the injury actually manifested itself in September of 1975, when Doctor Smith discovered the herniated disc. He contends that the consultation with Doctor Carter in November of 1974 only suggested cervical myositis as stated in the doctor’s report. Alternatively, plaintiff contends that the injury manifested itself in April of 1975, when Doctor Carter thought the symptoms suggested cervical nerve root irritation.
We reject plaintiff’s contention that the herniated disc manifested itself in September of 1975 and his alternative contention that the herniated disc manifested itself in April of 1975. It seems clear that Bolden’s injury manifested itself in November of 1974 when his pain reached such an intense level after mowing lawns that he was forced to see Doctor Carter. At this time it became apparent that plaintiff could no longer engage in gainful employment. Plaintiff’s testimony on cross-examination bears upon this point.
Well, Virgie, isn’t it a fact that you didn’t have any trouble in your neck until you went to work in those yards for Mr. Hood and Mr. Stewart? Isn’t that a fact? Q-
A. I had some misery.
Q. In your neck?
A. I had some light misery in my neck, but it wasn’t severe. I didn’t have to knock off. I could stir around as long as I didn’t try to do no work.
Q. Since you were doing that work in those yards, it came on you pretty severe then, didn’t it? Your neck?
A. It got worser right now.
Q. It got pretty bad though when you were working in those yards?
A. Bad — Bad.
Q. And it’s been bad ever since right up to the time they operated on your neck, wasn’t it?
A. Well, I got eased some when they operated on my neck, but if I get out to do anything now.
Q. But I mean from the time in November of 1974, when you first started having severe trouble in your neck because of working in those yards, it was severe up until that time that doctor in Jackson operated on you, isn’t that right?
A. From the time I worked on Mr. Stewart’s and them’s yard?
Q. Yes. From that time until you went to Jackson for the surgery?
A. I was just about out. I didn’t know nothing hardly.
Q. And it was pretty much a constant thing?
A. It was tough. It was tough. I had to be handled like a baby nearly.”
Although it is true that “development of the injury” as construed by the cases means something more than the initial occurrence of pain, it is also true that it does not mean definite diagnosis by a physician. Wallace v. Remington Rand, Inc., supra; Hobley v. Phoenix of Hartford Insurance Company, 233 So.2d 589 (La.App. 4th Cir. 1970); Guillory v. Maryland Casual *496 ty Company, 227 So.2d 620 (La.App. 3rd Cir. 1969). Development of the injury refers to the time it becomes manifest to an employee that he will no longer be able to pursue gainful employment.
We think the facts indicate that it was manifest to plaintiff in November of 1974 that he could not return to gainful employment. We therefore do not find error on the part of the trial court in determining that the manifestation took place in November of 1974. Plaintiff’s claim prescribed in November of 1975, one year after the manifestation, and consequently, suit filed on March 24, 1976, was untimely.
For the above reasons we affirm the judgment of the district court at appellant’s costs.

AFFIRMED.