363 So.2d 419 (1978)
Virgie BOLDEN, Plaintiff-Appellant-Relator,
v.
GEORGIA CASUALTY AND SURETY COMPANY, Defendant-Appellee-Respondent.
No. 61594.
Supreme Court of Louisiana.
October 9, 1978.
*420 E. M. Nichols, Lake Charles, for plaintiff-appellant-relator.
H. O. Lestage, III, Hall, Lestage & Lestage, DeRidder, for defendant-appellee-respondent.
TATE, Justice.
The plaintiff Bolden sues his employer's insurer to recover workmen's compensation benefits. The trial court held that Bolden's claim had prescribed, and the court of appeal affirmed. 353 So.2d 492 (La.App. 3d Cir. 1977). These courts held that Bolden's work-caused injury had developed more than one year prior to the date of suit.
We granted certiorari, 355 So.2d 265 (La. 1978), because we entertained doubt as to this conclusion. At issue is the proper interpretation of the provision of La. R.S. 23:1209[1] that "where the injury does not result at the time of, or develop immediately after the accident," then the one-year limitation within which the plaintiff brings suit "shall not take effect until the expiration of one year from the time the injury develops" (except that no suit may be brought more than two years after the accident).

I.
In a work-accident of May 23, 1974, the plaintiff fell from a truck. His injuries were initially diagnosed as low-back strain. He was discharged as cured by his attending physician on August 17, 1974.
He did not file this suit until March 24, 1976, more than a year after the last payment of compensation.
After his medical discharge in August, 1974, Bolden did not return to work for his *421 employer. He suffered continued complaints when he went to work mowing lawns; this time in the neck area, as well as the low-back. When he returned to his attending physician in November of 1974, the doctor felt that he had symptoms of cervical myostis (a muscle inflammation not shown to be traumatically induced).
It was not until April of 1975, according to this physician, that symptoms manifested themselves of the actual cause of the pain and disability (cervical nerve root irritation resulting from a small herniated disc in the upper region of the spinal column).
The claimant was subsequently referred to a neurosurgeon by another doctor. In September of 1975, after an operation, this specialist discovered and removed the herniated disc matter the source of the symptoms of nerve root irritation in the neck area, and also the actual reason for the trauma-caused undoubted disability for which the plaintiff seeks workmen's compensation.
As we construe it, this specialist's testimony ascribes the most probable cause of this trauma-resultant disability as the claimant Bolden's earlier accident of May, 1974, when he fell from the truck and sustained the more-immediately painful low-back injury. We do not find persuasive the defendant's argements to construe otherwise this uncontradicted testimony.

II.
A recurrence or aggravation of an injury initially sustained at work is regarded as compensable and as resulting from the initial work-accident, even though the recurrence "develops" away from the premises and while the claimant is no longer employed by the master. Owens v. Liberty Mutual Insurance Company, 307 So.2d 313 (La. 1975). See also Burleigh v. Argonaut Insurance Company, 347 So.2d 13 (La.App. 3d Cir. 1977).
The defendant contends, however, that the recurrence or development of the present disability manifested itself by November, 1974 more than one year prior to the institution of the present suit in March, 1976 and, thus, is prescribed.
The defendant's argument is factually based upon the plaintiff's testimony of his back and neck difficulties when he attempted to work for other employers after his discharge, as well as upon the admitted fact that his neck difficulty (the cause of his present disability) was severe enough that in November, 1974 (more than a year before the suit) he consulted his original attending physician. (The latter, however, incorrectly ascribed a non-traumatic cause to the neck complaint.) The defendant forcefully argues that, therefore, by his own testimony the claimant was aware of his disability, although not of its cause.
In upholding this position, the intermediate court essentially relied upon our statement in Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522, 526 (1956): "Development, as applied to a compensable injury, signifies something more than occurrence and pain. It connotes the time when disability to perform work becomes manifest either to the injured employee or his employer."
In context, this statement in Wallace was primarily applicable to the case of the retained employee, who continues to work with symptoms which might have been held to be disabling (if litigated) but which did not become manifestly disabling to the employee until he was forced to quit his work. We held that the disability did not become manifest or "develop" until that date, because to select an earlier date "would be dealing in conjecture." 86 So.2d 525.
In subsequent jurisprudence applying Wallace, the intermediate courts, in overruling pleas of prescription, held that the injury or disability did not "develop" until the employee actually becomes unable to perform his former duties.[2] This test is *422 appropriate when, under the facts, the issue is whether the injured employee who returns to work is disabled at some conjectural time before the day when he actually is unable to continue at work due to his disability.
The defendant contends that this rule enunciated in Wallace implies a test applicable to the different factual issue reflected by the present circumstances. The formulation of the test of "development" proposed to be applicable is that manifestation or development of the subsequent disability occurs at the moment that the employee is physically unable to perform his duties, as measured (at a trial long after the moment) by the evaluation of all the factual and (later available) medical data.
This test, as thus formulated, is not necessarily implied by the Wallace principle, at least as applied to the present facts. (Moreover, if applied to the facts in the cases in the Wallace line, the test would have required prescription to be maintained in them rather than (as was the result) overruled.)
The underlying rationale of the Wallace rule is that an employee who becomes disabled after the prescriptive year (but within two years after the accident) will not be penalized by the loss of his compensation rights, unless he fails to bring suit to enforce them within one year after it is manifest, rather than conjectural, that he has a compensable claim. See also: Bigham v. Swift & Company, 229 La. 341, 86 So.2d 59 (1956); Johnson v. Cabot Carbon Company, 227 La. 941, 81 So.2d 2 (1955); Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218 (1952).
In the present case, the employee may (or may not) have been able to perform work at the time he first reported his neck symptoms to his local doctor in November, 1974, but his legal disability was not manifest: The doctor had discharged him as cured of work-accident residual, and this physician ascribed the present symptoms to non-traumatic causes curable by conservative remedy. no more than in wallace and the other decisions cited, should this undoubtedly disabled employee be penalized by the loss of his compensation rights because he did not bring suit within the year that he had a conjectural, rather than a manifest, compensable claim.
It was not until April, 1975, that the neck symptoms had sufficiently manifested themselves so that this physician or the plaintiff himself had any indication that they were traumatic in origin. The plaintiff brought suit in March, 1976, within a year of this manifestation or development of his injury. His claim, therefore, is not prescribed.

III.
The defendant contends, with some persuasiveness, that the medical failure to diagnose correctly the early symptoms did not prevent the disability from being manifest. It relies upon Hobley v. Phoenix of Hartford Insurance Company, 233 So.2d 589 (La. App. 4th Cir. 1970) and Guillory v. Maryland Casualty Company, 227 So.2d 620 (La. App. 3d Cir. 1969).
In both of these instances, however, the plaintiffs were aware of a traumatic injury at the time of the accident, but delayed until later in securing a medical diagnosis of the cause of their continued disability. The courts held, properly, that under the facts the traumatic injury or disability was manifest to the plaintiffs from the time they suffered it, not from the time they secured a medical diagnosis of it. The decisions are inapplicable to the present facts.
Generically, the present situation is more similar to that in Hebert v. Hartford Accident & Indemnity Company, 331 So.2d 222 (La.App. 3d Cir. 1976); certiorari denied 334 So.2d 229 (La. 1976) (". . . no error of law"). There, following an initial injury and treatment, a workman was released to return to work. Although he still had residual symptoms, he continued working until, finally, his disability became fully manifest as total, and corrective surgery was required. In overruling the plea of prescription, *423 the court noted that the (legally) disabling nature of the injury had become latent, so that "`the later manifestation is regarded as the time when the injury "develops" (again), so that a suit brought within a year of re-manifestation is timely.'" 331 So.2d 225.
See also: Payne v. Travelers Insurance Company, 299 So.2d 913 (La.App. 3d Cir. 1974); Seago v. Continental Casualty Company, 294 So.2d 912 (La.App. 2d Cir. 1974); Hodge v. T. L. James & Co., 57 So.2d 913 (La.App. 2d Cir. 1952); Manuel v. Travelers Insurance Company, 46 So.2d 319 (La.App. 1st Cir. 1950).

IV.
The plea of prescription had been referred to the merits, and the case was fully tried before the district court upheld the plea of prescription. As earlier noted, the preponderance of the evidence supports a finding of total disability from April, 1975, as well as in the initial uncontested period of May 23 through August 17, 1974.
During the initial period, the plaintiff had been paid compensation at the rate of $45.50 per week, apparently based upon his estimate to an adjuster that his earnings averaged $70.00 per week as a pulpwood cutter. However, at the trial his uncontradicted testimony proves earnings in excess of that which entitles him to the statutory maximum of $65.00 per week applicable on the date of the injury (May 23, 1974) during total disability, not to exceed five hundred weeks in all. La. R.S. 23:1202 (1973), 1221(2) (1968).

Decree
For the reasons assigned, we reverse the judgment of the court of appeal sustaining the plea of prescription and dismissing the plaintiff's suit; and we do now order, adjudge, and decree judgment in favor of the plaintiff, Virgie Bolden, and against the defendant, Georgia Casualty and Surety Company, holding the latter liable in the amount of $65.00 per week from May 23, 1974 through August 17, 1974, and from April 30, 1975 on, for a period not to exceed five hundred weeks; less credit for compensation paid, with legal interest upon all delinquent installments of workmen's compensation until paid. The plaintiff's right to recover unpaid medical expenses is reserved. The defendant is taxed with all costs of these proceedings.
REVERSED AND REMANDED.
SANDERS, C. J., dissents and assigns reasons.
SUMMERS, J., dissents for reasons assigned by Court of Appeal.
SANDERS, Chief Justice (dissenting).
This workmen's compensation case involves an interpretation of the prescriptive provision contained in LSA-R.S. 23:1209. Plaintiff suffered an injury in an accident on May 23, 1974, and filed the present suit on March 24, 1976.
When plaintiff brought this suit against his employer's compensation insurer, Georgia Casualty and Surety Company, he alleged that, because of a herniated disc, he has been permanently disabled since the 1974 accident. Defendant filed a plea of prescription, and it was referred to the merits. After trial on the merits, the district court sustained the plea of prescription. The court of appeal affirmed. 353 So.2d 492.
LSA-R.S. 23:1209 provides:
"In case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter or unless within one year after the accident proceedings have been begun as provided in Parts III and IV of this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of partial disability this limitation shall not take effect until three years from the time of *424 making the last payment. Also, where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident." (Emphasis supplied.)
At trial, the parties stipulated the following facts:
"1. Plaintiff sustained an accidental personal injury on May 23, 1974, in the course and scope of his employment;
"2. Plaintiff's injury was diagnosed by Doctor Henry S. Carter, as a lumbar sacral sprain;
"3. Plaintiff was hospitalized beginning May 23, 1974, and ending June 8, 1974;
"4. Plaintiff was discharged as cured by Doctor Carter on August 17, 1974;
"5. Plaintiff was paid weekly compensation benefits of $45.50 beginning May 23, 1974 and ending August 21, 1974;
"6. Plaintiff's medical expenses for care and treatment for the injury were paid, the last payment being on September 27, 1974; and
"7. Plaintiff did not return to work for the employer after the accident of May 23, 1974."
To supplement the stipulation, the parties introduced testimony on the prescription issue.
Although plaintiff was discharged by Dr. Carter on August 17, 1974, he did not return to work for his former employer. In the fall of 1974, after attempting to mow lawns, plaintiff began to experience pain in the cervical (neck) region, as distinguished from the lumbar sacral (lower back) sprain for which Dr. Carter had previously treated him. By November of 1974, this pain had become severe; plaintiff reported it to Dr. Carter. Plaintiff also saw Dr. McCarthy in Hattiesburg, Mississippi, who referred him to Dr. Smith, a neurosurgeon.
After examining plaintiff, Dr. Smith determined that surgery was indicated, and he performed a decompressive laminectomy on September 26,1975. At this time, it was discovered that plaintiff had a small herniated cervical disc.
On March 24, 1976, plaintiff brought this suit against his employer's compensation insurer, alleging that because of the herniated disc he has been totally and permanently disabled from the date of the original accident. He sought maximum compensation benefits, maximum medical expenses, and an increase in the compensation payments already made.
Plaintiff's claim has prescribed unless it falls under that portion of LSA-R.S. 23:1209, known as the "development of injury rule," which provides:
". . . [W]here the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident."
As this Court noted in Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522 (1956), the cited provision establishes a prescription of one year, coupled with a peremption of two years. The one-year prescription runs from the development of the injury.
Under the statute, the injury is considered to be developed when it becomes manifest that the employee is disabled from pursuing his employment. See Wallace v. Remington Rand, Inc., supra; Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218 (1952).
Both lower courts found that the cervical disability manifested itself in November, 1974, when severe pain forced the employee to consult the attending physician. Hence, the courts held that the one-year prescription had run when this suit was filed on March 24, 1976. They did not reach the serious factual question of whether the cervical *425 injury was causally related to the original accident.
The trial court's factual finding that the injury developed in November, 1974, is entitled to great weight. It should be disturbed on appeal only if there is no reasonable factual basis for it. Canter v. Koehring, La., 283 So.2d 716 (1973).
Plaintiff testified freely that he knew he was disabled from his employment at the time the attending physician discharged him. In the fall of 1974, he attempted to do yardwork, but was unable to do it. In November, 1974, he returned to the attending physician with severe neck pain. He further testified that from that time, he "had to be handled like a baby nearly." In my opinion, the evidence fully supports the trial judge's finding.
For the reasons assigned, I respectfully dissent.
NOTES
[1] La. R.S. 23:1209 (1950) provides in full (the italicized last sentence is the provision presently involved):

"In case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter or unless within one year after the accident proceedings have been begun as provided in Parts III and IV of this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment. Also, where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident." (Italics ours.)
(The 1975 amendment of this section did not affect this provision or the issue before us.)
[2] See, e. g.: Burleigh v. Argonaut Insurance Co., 347 So.2d 13 (La.App. 3d Cir. 1977); Harris v. Seaboard Fire & Marine Insurance Co., 337 So.2d 262 (La.App. 2d Cir. 1976), certiorari denied 339 So.2d 853 (La. 1976); Madison v. American Sugar Refining Co., 134 So.2d 646 (La.App. 4th Cir. 1961), limited certiorari granted on unrelated case and award amended, 243 La. 408, 144 So.2d 377 (1962).