497 So.2d 395 (1986)
Lucy Faul CEDOTAL, Plaintiff-Appellant,
v.
WAUSAU INSURANCE COMPANY and Huval Bakery, Inc., Defendants-Appellees.
No. 85-1120.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1986.
Writ Denied December 19, 1986.
*397 G. Paul Marx of Marx & Marx, Lafayette, for plaintiff-appellant.
John A. Jeansonne of Jeansonne, Briney, Lafayette, for defendants-appellees.
Before FORET, STOKER and KING, JJ.
KING, Judge.
The issue presented by this appeal is whether or not the trial court committed manifest error in finding that plaintiff's worker's compensation action was barred by prescription.
Lucy Faul Cedotal (hereinafter sometimes referred to as plaintiff) filed suit for worker's compensation benefits against her former employer, Huval Bakery, Inc., and its insurer, Wausau Insurance Company (both hereinafter sometimes referred to as defendants). Defendants filed a peremptory exception of prescription. The trial court rendered judgment in favor of defendants dismissing plaintiff's suit on the grounds that plaintiff's action had prescribed before institution of suit. From this judgment plaintiff timely appeals. We affirm.

FACTS
Plaintiff was employed by defendant, Huval Bakery, Inc. (hereinafter referred to as Huval) from August, 1980 until the end of July, 1984. Initially, she worked as an assistant bookkeeper. In May, 1981, she was assigned to keypunch operator duties in Huval's computer room. In December, 1980, plaintiff had undergone surgery of a gynecological nature, which involved removal of a Bartholin cyst. In November, 1982, plaintiff underwent a grafting operation to decrease discomfort allegedly caused as a result of the 1980 operation.
As a result of these and other medical procedures, plaintiff was absent from work for a substantial amount of time during her employment with Huval. In February, 1984 plaintiff received back surgery involving a chymopapain injection treatment for a disk related problem in her back which caused her to be absent from work until the end of July, 1984. Plaintiff continued to receive her paycheck during this period of her absence, from February, 1984 to the end of July, 1984, just as she had received her paycheck during previous periods of absence. Plaintiff's medical expenses were covered by a group insurance policy provided by Huval, to which plaintiff contributed in part.
When plaintiff returned to work at the end of July, 1984 she was terminated from employment with Huval due to excessive absences, paid wages through July 28, 1984 and paid her accumulated vacation pay. Plaintiff thereafter filed for and received unemployment compensation benefits for approximately six months.
In October, 1984, after being discharged from employment, plaintiff for the first time filed a claim for worker's compensation benefits in accordance with law for an injury allegedly arising out of her employment with Huval. A recommendation was made by the Louisiana Office of Worker's Compensation. The recommendation was rejected by plaintiff and, on January 31, 1985 plaintiff filed a petition with the Fifteenth Judicial District Court, for Lafayette Parish, Louisiana seeking worker's *398 compensation benefits. The petition alleged that, as a result of plaintiff's gynecological problems and complications, plaintiff developed a work-related compensatory scoliosis in her back causing back pain which resulted in her being totally and permanently disabled. Plaintiff sought worker's compensation benefits because she was required to operate keypunch equipment by sitting for long periods of time in a slanted position in her chair due to the pain from her pre-existing medical condition. This sitting in a slanted position in her chair was allegedly the cause of plaintiff's compensatory scoliosis, leading to a compression of the L5 nerve root, which required surgery and allegedly caused plaintiff's disability for which she now claims worker's compensation benefits. Plaintiff in her petition claimed that she was disabled when Huval, her employer, advised her that she would not be permitted to return to work. Alternatively, her claim, as amended, is that she was disabled beginning January 31, 1984, the approximate date on which she stopped working for Huval in preparation for her back surgery involving a chymopapain injection.
A motion for preliminary judgment was filed on behalf of plaintiff due to defendants' failure to timely answer the petition in compliance with LSA-R.S. 23:1315, and a resulting preliminary judgment was rendered on March 8, 1985 ordering defendants to pay plaintiff full compensation benefits and reasonable medical expenses related to the injury alleged in the petition until a hearing on the merits. This preliminary judgment was held in abeyance pending further orders of the court upon defendants' posting bond. Judgment was later rendered by the trial court on April 18, 1985, vacating the March 8, 1985 preliminary judgment, and denying plaintiff worker's compensation benefits and medical expenses based on defendants' motions and exceptions. The April 18, 1985 judgment of the trial court was reversed and set aside by the Third Circuit, Louisiana Court of Appeal and the March 8, 1985 preliminary default judgment reinstated upon writ application filed on behalf of plaintiff in the matter entitled Lucy Faul Cedotal v. Wausau Insurance Company and Huval Bakery, Inc., Our Docket Number 85-449, writ granted and made peremptory on May 10, 1985. A writ application for review of our decision on this matter was denied by the Supreme Court of Louisiana. See Cedotal v. Wausau Ins. Co., 472 So.2d 915 (La. 1985).
Prior to trial on the merits defendants filed two pleadings, which form the basis of this appeal. Defendants filed a peremptory exception of prescription, alleging that the plaintiff filed formal claim with the Louisiana Office of Worker's Compensation more than one year after the alleged accident giving rise to the alleged disability and therefore, the plaintiff's claim had prescribed according to LSA-R.S. 23:1209. Defendants supplemented and amended their exception of prescription to allege that the plaintiff had also filed her petition in court for worker's compensation benefits more than sixty days after her receipt of the recommendation of the Office of Worker's Compensation Administration, and, therefore, her claim had also prescribed according to LSA-R.S. 23:1311. Defendants' exception of prescription was referred to the merits by the trial court. Defendants also filed a Rule to Traverse plaintiff's right to proceed in forma pauperis which was disposed of on the day of trial.
Plaintiff assigns as error on appeal:
(1) The trial court's finding that plaintiff was not entitled to proceed in forma pauperis; and
(2) The trial court's finding that the claim had prescribed one year from the date of the accident instead of one year from the date of the manifestation of the injury; and
(3) The trial court's not finding that plaintiff had a compensable injury by the consistent aggravation of plaintiff's medical condition by her routine work activity; and
(4) The trial court's failure to find that the claimant was totally and permanently *399 disabled as a result of her debilitating, substantial and constant pain which, more probably than not, was caused by her employment.

RIGHT TO PROCEED IN FORMA PAUPERIS
On the morning of the trial on the merits, a hearing was held on plaintiff's right to proceed in forma pauperis. Evidence was presented as to plaintiff's pauper status and at the conclusion of the hearing the trial judge set aside his original forma pauperis order and ordered plaintiff to pay the accrued costs and to advance costs of court or post bond for costs. Plaintiff assigns as error the order and ruling of the trial court denying plaintiff's pauper status and causing her to pay costs and to advance costs of court or post bond for costs.
Plaintiff contends that the trial court erred in requiring her to pay accrued costs, and to advance costs or post bond in this matter, alleging that she is entitled to proceed in this matter in forma pauperis. Plaintiff filed the requisite pauper forms and obtained an ex parte order from the trial allowing her to proceed in forma pauperis. On the day of trial defendants moved to traverse on the issue of plaintiff's pauper status.
When plaintiff filed suit in this matter her total monthly income, as alleged in her affidavit seeking an order to proceed in forma pauperis, consisted of child support and alimony payments totalling $400.00 monthly and unemployment compensation benefits of $164.00 per week for a total monthly income of approximately $1,056.00. Her total monthly expenses were approximately $1,063.00. Plaintiff owned a mobile home worth approximately $5,000.00 on which she was paying notes, a bank account with a $50.00 balance, a 1980 model economy car of undetermined value and a small country lot valued at $5,500.00. At the time of trial and the hearing on the motion to traverse, plaintiff's unemployment compensation benefits had been discontinued; however, she had prior to trial received a check for worker's compensation benefits totalling $1,739.97, which she used to pay past due bills, and had received two other weekly checks for worker's compensation benefits of $193.33 each and was then receiving weekly worker's compensation benefit checks of $193.33. Plaintiff had also traded in her car and applied the proceeds toward a down payment on another vehicle for her fiancee. The trial court sustained defendant's motion to traverse plaintiff's status to proceed in forma pauperis and ordered plaintiff to pay accrued costs and advance court costs or post bond, finding that her monthly income now exceeded her monthly living expenses.
A litigant may qualify to file suit in forma pauperis if the litigant is financially unable to pay for the cost of asserting his claims in court. LSA-C.C.P. Art. 5181; Benjamin v. National Super Markets, Inc., 351 So.2d 138 (La.1977), writ den., 366 So.2d 561 (La.1979). Generally a litigant's right to proceed in forma pauperis is largely within the discretion of the trial court. Jolivette v. Jolivette, 386 So.2d 707 (La. App. 3rd Cir.1980). However, this right is to be exercised reasonably and is subject to review for abuse. If a litigant becomes able to pay court costs subsequent to being permitted to proceed in forma pauperis, such costs may be taxed against him. Benjamin, supra.
Plaintiff cites Roy v. Gulf States Utilities Company, 307 So.2d 758 (La.App. 3rd Cir.1975) for the proposition that where a claimant's injuries prevent his gainful employment the claimant is entitled to proceed in forma pauperis. This case does not stand for this proposition of law as this Court only found in Roy, supra, that plaintiff was entitled to proceed as a pauper because of his poverty. As with all pauper applications, the issue is the litigant's ability to pay costs and advance costs or post bond for costs so that if found unable to do so the litigant will not be deprived of his day in court. Crowe v. Howard, 372 So.2d 1057 (La.App. 1st Cir.1978). In reviewing the record we find, as did the trial court, that plaintiff's monthly income exceeded her monthly living expenses. In light of *400 this and the other factors in the record concerning plaintiff's financial ability, we do not find that the trial court abused its discretion in requiring plaintiff to pay the accrued costs and to advance court costs or post bond for costs in this matter. For this reason we do not find that the trial judge abused his discretion in setting aside his order permitting plaintiff to proceed in forma pauperis.

PRESCRIPTION
At trial on the merits the depositions of medical experts and the deposition of plaintiff were either jointly introduced or were introduced without objection and other evidence and testimony was received. Plaintiff testified that in spite of her leg and hip pains, as a result of her female surgery in 1980, she experienced no back problems until attempting to lift a box of computer paper at work for Huval in February, 1983. She also testified that she told the entire office staff that she had hurt her back while lifting the box of paper, but that she had never filed an accident report concerning the incident. She further testified that she went to Dr. Harper in 1983 because of leg pains, not back pains, and that during one visit told Dr. Harper about the lifting "accident".
The testimony of plaintiff was controverted at trial by the testimony of her co-workers. Plaintiff called as witnesses several of her co-workers, each of whom testified that plaintiff had never discussed the particular paper lifting "accident" which plaintiff claimed was the outset of her back pain. To the contrary, these witnesses stated that plaintiff had many times related to them that her back pain and difficulties were complications resulting from her 1980 gynecological surgery and were not related to anything at her work.
At the conclusion of the trial, the trial court found that the plaintiff's claim for disability allegedly arising from the paper lifting "accident", which plaintiff testified to her knowledge was the only work-related "accident" which gave rise to her disability, had prescribed according to the one year prescriptive period as set forth in LSA-R.S. 23:1209. As to plaintiff's claim that she was disabled due to her sitting in her chair for long periods of time at work in a slanted position due to pain from the previous gynecological condition, resulting in compression of the L5 nerve root, the trial court found that plaintiff knew of any resulting disability from this condition as of May, 1983 and that, therefore, this alleged claim had also prescribed.
Generally, under LSA-R.S. 23:1209, a suit for worker's compensation benefits must be filed within one year of the accident. This article, which was amended by Acts 1985, No. 884 § 1, and Acts 1985 No. 926 § 1, but which remains substantially unchanged as applied to this case, reads, in pertinent part, as follows:
"A. In case of personal injury ... all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed...". LSA-R.S. 23:1209(A).
This prescriptive period has been upheld by this Court. See Hebert v. Lake Charles American Press, 427 So.2d 916 (La.App. 3rd Cir.1983). See also, LeBlanc v. Consolidated Aluminum Co., 433 So.2d 361 (La.App. 3rd Cir.1983), writ den., 440 So.2d 730 (La.1983).
LSA-R.S. 23:1209(A) also provides an exception to the rule that a formal claim must be filed within one year of the accident. The article provides in pertinent part:
"[W]hen the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident." (Emphasis added.) LSA-R.S. 23:1209(A).
This statute sets forth what is generally known as the "developing injury rule" and *401 it has also been jurisprudentially interpreted as meaning that "an employee who becomes disabled after the one year prescriptive period (but within two years after the accident) will not be penalized by the loss of his compensation rights, unless he fails to bring suit to enforce them within one year after it is manifest, rather than conjectural, that he has a compensable claim." Barker v. Aetna Cos. & Sur. Co., 380 So.2d 178, at page 179 (La.App. 1st Cir. 1980), writ den., 383 So.2d 25 (La.1980), citing Bolden v. Georgia Cas. & Sur. Co., 363 So.2d 419, 422 (La.1978). The injury is considered sufficiently developed when the worker is substantially prevented by the disability from performing the duties of his employment. Palmer v. Carter Federal Credit U., 397 So.2d 50 (La.App. 2nd Cir. 1981). Under the developing injury theory, the plaintiff need not prove that his injury resulted from a sudden unexpected traumatic event, i.e., an accident. "Plaintiff need only show that his disability was caused by a work activity which can be gradual and progressive in nature." Loyd v. Ecko Fabricating Co., Inc., 433 So.2d 1063, at page 1065 (La.App. 5th Cir.1982), writ den., 435 So.2d 427 (La.1982), citing Harper v. Kast Metals Corporation, 397 So.2d 529 (La.App. 2nd Cir.1981), writ den., 401 So.2d 988 (La.1981). Plaintiff, however, bears the burden of proving by a preponderance of the evidence that a causal relationship exists between the disability complained of and a work-related accident. Johnson v. Travelers Insurance Company, 284 So.2d 888 (La.1973); Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (La.1971); Gorbach v. Buck Kreihs Company, Inc., 398 So.2d 1267 (La.App. 4th Cir.1981). Where a preexisting condition is alleged to have been aggravated by an on-the-job injury to the point of disability, the plaintiff must also establish such aggravation by a preponderance of the evidence. Gorbach, supra; Johnson, supra; Jordan, supra.
In order for the plaintiff in this case to recover under Louisiana Worker's Compensation laws the plaintiff must prove by a preponderance of the evidence that either she was disabled as a result of an accident which occurred less than one year before her filing of a formal claim with the Louisiana Office of Worker's Compensation or less than one year from development of a work-related injury but no later than two years from the date of the accident. LSA-R.S. 23:1209.
Plaintiff in her own testimony relates the onset of her work-related back problems to the incident of February, 1983 when she attempted to lift a box of computer paper weighing approximately 43 pounds. Plaintiff claims she told many of her co-workers about the paper lifting incident. At trial, however, each of plaintiff's co-workers who testified on behalf of plaintiff related her back problems to plaintiff's preexisting gynecological problems and not to any incident occurring at work. Although plaintiff was familiar with worker's compensation claims, having filed a claim with a previous employer for a back related injury in 1970, and was familiar with Huval's policy requiring filling out accident reports for injuries on the job, plaintiff neither filed nor asked to file an accident report concerning the paper lifting "accident".
Expert testimony by depositions introduced at trial is also unfavorable both to plaintiff's position taken in her testimony and her contentions set forth in her petition. Dr. Harper, a neurologist who examined plaintiff shortly after the alleged paper lifting "accident", was never told about the paper lifting injury. He summarized that plaintiff's disability stemmed from two possibly unrelated problems: (1) trochanteric bursitis and (2) the residual of a left L5 radiculopathy. He also testified that neither of these problems was caused by anything happening to plaintiff while she worked for Huval. He further testified that he was not sure whether or not plaintiff's work at Huval was a contributory cause of plaintiff's disability.
The testimony of Dr. Humphries, a certified orthopedic, appears from the record as being even less favorable. He testified that, although more probably than not, he could say that plaintiff's posture at work *402 was a contributing factor, he was "not sure that the disc herniation that she ended up having would be that much worsened by a sitting posture". He also testified that he did not consider plaintiff as having significant scoliosis. He further testified that the "sitting bone pain," which was related to plaintiff's gynecological problem, was of greater concern to her than the L5 radiculitis back area pain. Dr. Humphries was also apparently not told about any work-related injury, since his records did not so reflect. Dr. Humphries did not consider plaintiff as being permanently disabled, as she was working prior to her scheduled surgery involving a chymopapain injection, and he released her for work immediately before her employment with Huval was terminated.
Dr. Marx, a chiropractor who first saw plaintiff on March 26, 1985, subsequent to the filing of the suit in this matter, testified that he found plaintiff incapable of performing her work duties due to a compensatory scoliosis but was unable to determine whether the scoliosis caused a disc injury or vice versa.
The thrust of the plaintiff's argument in assigning error to the trial court's ruling that plaintiff's claim had prescribed according to LSA-R.S. 23:1209 is that the trial court erred in finding that the one year prescriptive period in which plaintiff could bring her action began on the day of the "accident" rather than on the date of the "disability developing".
The trial court determined that the claim which plaintiff made during her testimony at trial had prescribed as of February, 1984, one year after the alleged paper lifting incident. Plaintiff apparently experienced no increase in back pain subsequent to the paper lifting incident. As the plaintiff testified at trial:
"Q. And nothing else that happened to you at work, as I think you said in your deposition, caused you any back pain or hurt your back?
A. Other than lifting the box.
Q. Now, that brings us back to the question that I was asking a moment ago when your counsel objected. If you had hurt your back at work, why, knowing that all this medical you had to incur would be paid for completely by compensation if it were work related,(Interrupted)
A. That never crossed my mind. Never.
Q. And yet, you had had a previous comp claim in 1970?
A. I had even forgot about that."
Plaintiff's testimony as to her pain not being connected with any work-related activity is not contradicted by any expert testimony at trial. Plaintiff only testified that she experienced the same pulling sensation in her back each time she attempted to lift a heavy object. Plaintiff testified that she knew she had previously injured her back in the paper lifting "accident" yet she failed to timely file a formal claim for worker's compensation benefits. We find, as did the trial court, that plaintiff's testimony does not support an application of the developing injury theory. Therefore, unless the totality of the evidence would support a finding that there was another work related accident and injury which developed after the first paper lifting "accident", plaintiff's claim has clearly prescribed.
Plaintiff also contends that she was disabled on or about the end of July, 1984, the point in time at which her employment with Huval was terminated because of another work-related injury. Plaintiff, in her appellate brief, cites several cases for the proposition that a work-related injury does not develop for prescriptive purposes until the plaintiff manifests an inability to work, including Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522 (1956); Bolden v. Georgia Cas. & Sur. Co., supra; Cheatham v. Morrison, Inc., 469 So.2d 1219 (La.App. 1st Cir.1985); Huhn v. Kroger Co., 454 So.2d 180 (La.App. 1st Cir. 1984), and Roberts v. Sonic Drive Inn of Marksville, 441 So.2d 24 (La.App. 3rd Cir. 1983), writ den., 444 So.2d 121 (La.1983). These cases are inapplicable to the instant case. Each of the above cases contains a *403 clear factual finding of a disability which was work-related which later became manifest either to the employer or employee. These cases also have an absence of any pre-existing non-work related disability, such as the one plaintiff in this case claims she has suffered from. The plaintiff in this case was terminated from employment due to excessive absences. These absences were largely due to medical problems associated with plaintiff's pre-existing non-work related gynecological problems. We find no merit in plaintiff's contention that the point in time when she was terminated from employment, due to excessive absences, was also the point in time that her disability connected to a work-related injury became manifest either to herself or her employer.
Plaintiff alternatively contends that her work-related injury developed on January 31, 1984, about the time that she left work to receive a chymopapain injection for treatment of her compression of the L5 nerve root. Plaintiff cites Bolden, supra; and Hebert v. Hartford Accident & Indemnity Company, 331 So.2d 222 (La. App. 3rd Cir.1976), writ ref'd, 334 So.2d 229 (La.1976), for the proposition that confirmation or diagnosis of a disabling injury or later development of an earlier work injury into a disabling condition should start the running of the one year prescriptive period. Plaintiff further alleges that her disability was not manifest until January, 1984, at the earliest, when she was scheduled to have a chymopapain injection for the disk injury.
In Bolden, supra, the plaintiff's symptoms manifested themselves of the cause of pain and disability almost one year after a previous work-related accident. Medical testimony revealed that the cause of the pain and disability was a small herniated disc, and the Court found that the most probable cause of this disability was the work-related accident occurring almost one year earlier. The instant case is factually dissimilar. Here the principal cause of plaintiff's pain and discomfort, by plaintiff's own admission, was her pre-existing gynecological difficulties which were clearly not work-related. In the instant case the cause of plaintiff's disability is a complex issue due to conflicting testimony and the nature of plaintiff's pre-existing injury and its possible cause of plaintiff's back pain.
Plaintiff in the instant case, by her own testimony, indicated that she had told Dr. Harper in March, 1983 that she had hurt her back lifting computer paper at work. She stated that she was told by doctors that sitting sideways "was just getting everything aggravated." If plaintiff's statements are to be regarded as true, it was manifest to plaintiff that in May, 1983 she had a work-related disability. Further, we can find no other fixed point in time after May, 1983 that plaintiff's alleged work-related disability became manifest either to plaintiff or her employer. Plaintiff was absent from work a substantial amount of time beginning with her 1980 operation, and plaintiff was terminated in 1984 due to her cumulated absences and her inability to consistently remain at work.
We herein incorporate the language of the trial court in its Reasons for Ruling:
"Plaintiff also alleges she was disabled due to the deterioration of her pre-existing gynecological condition. She maintains that her inability to sit for long periods of time caused her to be disabled as a result of the compression of the L5 nerve root. The Court finds the action based upon this allegation is barred by the one year prescriptive period, as well. Ms. Cedotal testified she first became aware that sitting sideways was aggravating her condition when she was told this by Dr. Harper in May, 1983. Dr. Harper testified in his deposition that plaintiff's sitting in a leaning position while still trying to sit with your head straight would tend to put pressure on the back of the L5 nerve root on that side. His deposition noted that he made this observation on May 19, 1983. It has been established by the plaintiff's own testimony and the deposition of Dr. Harper that she knew of this condition more *404 than a year before she took any acion [sic] and thus this suit is barred by the one year prescriptive provision of LSA R.S. 23:1209."
In reviewing the record and the Reasons for Ruling of the trial court, we cannot say that the trial court manifestly erred in sustaining defendants' exception of prescription according to LSA-R.S. 23:1209. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Mix v. Mougeot, 446 So.2d 1352 (La. App. 1st Cir.1984).
Plaintiff has the burden of proving his or her suit has not prescribed. Comardelle v. Jeandron Chevrolet, Inc., 449 So.2d 601 (La.App. 1st Cir.1984), writ den., 456 So.2d 1015 (La.1984). This burden is not relieved by the liberal construction placed on worker's compensation statutes. Pelt v. Clement Products Service, Inc., 323 So.2d 191 (La.App. 1st Cir.1975). Plaintiff has not met her burden of proof.
Since we find that plaintiff's claim or claims for worker's compensation benefits have prescribed, we find it unnecessary to address plaintiff's other assignments of error concerning her disability.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are taxed to the plaintiff-appellant.
AFFIRMED.