GARRISON, Judge,
dissenting.
From the decision of the majority, I respectfully dissent for the following reasons.
The bifurcated nature of R.S. 23:1209 is a well-developed distinction in Louisiana law. The statute’s distinction between “partial disability” and “permanent disability” which is implicit within the prescribed period has been recognized as two different causes of action by our brethren on the First Circuit in Wright v. Aetna Life and Casualty Company, 360 So.2d 235 (La.App. 1st 1978) at 237. The opinion from which I dissent refers to an “extended filing exception” and assumes that only one cause of action exists; I disagree. There are two causes of action with two distinct prescriptive periods.
*878 While the law attempts to order the chronology of events as they would be assumed to normally occur, the affairs of our citizens rarely fall in such tidy and static order. For that reason, the “development of the injury” theory arose in order to alleviate the burden imposed by a static construction of operative facts. In keeping with the bifurcated nature of R.S. 23:1209, the development of the injury theory is applicable to the two different causes of action as two parallel concepts, namely the development of a partial disability and the development of a permanent disability.
One of the criteria established for the development of the injury theory is the concept of “manifestation” of the injury. An operative fact may be the manifestation of a partial disability or a manifestation of a permanent disability. In the instant appeal the plaintiff’s termination of employment was a manifestation of a partial and expectedly temporary disability as is evidenced by the diagnosis of a “pulled muscle”; the injury was not manifest as permanent until it was discovered on March 20, 1978 that plaintiff had suffered vertebral disc damage. While a cause of action for partial disability may have prescribed as it commenced upon termination as manifestation, clearly the cause of action for permanent disability did not prescribe as the period did not begin until the injury was manifest as a permanent injury. This interpretation is entirely consistent with the decision in Burleigh v. Argonaut Insurance Company, 347 So.2d 13, 15 (La.App. 3rd, 1977) wherein the court quoted Mottet v. Libbey-Owens-Ford Glass Company, 220 La. 653, 57 So.2d 218 (1952).
“. . . We then stated the rationale of the cited cases to be an effort to encourage rather than penalize an employee who seeks to continue working, despite what later turns out to be a disability. In the situation where there is an initial manifestation of injury and of disability, but the employee is able to return to work, a new period of prescription of one year will nevertheless commence where there is either a new injury or a disabling remanifestation of the symptoms of the initial injury.”
Just as a new period of prescription of one year would commence for a partial disability, so should a new period of prescription commence for a permanent disability.
Accordingly, I find that the manifestation as permanent did not occur until March 20, 1978. Hence the petition was timely filed and plaintiff’s case was wrongfully dismissed. Even if plaintiff had not filed his petition until some months after it was in fact filed, the diagnosis on March 20, 1978 would have constituted a manifestation as permanent, giving rise to the commencement of a new prescriptive period so that the plaintiff’s case was filed timely and improperly dismissed.