532 So.2d 891 (1988)
Norman RONQUILLE
v.
STATE of Louisiana, DEPARTMENT OF WILDLIFE AND FISHERIES.
No. 88-CA-241.
Court of Appeal of Louisiana, Fifth Circuit.
October 12, 1988.
*892 Birdsall, Rodriguez, Robelot & Kehoe, Patrick G. Kehoe, Jr., New Orleans, for plaintiff-appellant.
William J. Guste, Jr., Atty. Gen., Robert S. Leake, Asst. Atty. Gen., Dept. of Justice, Risk Management Litigation, Baton Rouge, for defendant-appellee.
Before CHEHARDY, C.J., and BOWES and DUFRESNE, JJ.
CHEHARDY, Chief Judge.
Plaintiff, Norman Ronquille, appeals from a worker's compensation judgment rendered in favor of defendant, the State of Louisiana, Department of Wildlife and Fisheries (DWF). The judgment complained of dismissed his suit for benefits based on defendant's preemptory exception of prescription. The exception was granted following a trial on the merits.
On appeal plaintiff contends the suit was not prescribed and that he is entitled to payment of his medical expenses and wage benefits. He first argues that the suit was *893 not prescribed as to medical expenses, because it was filed within the 10-year prescriptive period applicable to medical expenses in workers' compensation cases. Secondly, he asserts the wage benefits were not prescribed because his injury did not "develop" until October 8, 1984, seven months following the accident and 11 months prior to filing suit. Third, he alleges the suit did not prescribe, because defendant lulled plaintiff into a false sense of security. Assuming a favorable judgment on appeal, he further asserts he is entitled to weekly wage benefits in the amount of $180.46 per month from May 18, 1984 plus interest, as well as $11,176.69 for payment of his medical expenses.
The facts show plaintiff was employed by the DWF as a caretaker at the Salvador Refuge for nine years prior to his resignation on May 18, 1984. He lived at the refuge headquarters and helped maintain the property, along with Irvin Dares, his immediate supervisor, and Jerry Schouest, the "game warden" (now referred to as a wildlife specialist).
On March 22, 1984 plaintiff suffered severe low back pain while assisting in the building of a dock. Two days later he was examined at Ochsner Hospital emergency room by Dr. Julius Wittington. Dr. Wittington's diagnosis was "low back strain versus rule out kidney stone." Because the diagnosis was unclear, an appointment was made for plaintiff to see Dr. Mims Ochsner, a urologist, the following day. In the meantime he was given a muscle relaxant for the pain.
Dr. Ochsner examined plaintiff as scheduled and also arranged for plaintiff to undergo an IVP (Intravenous pyelogram). The IVP showed a definite partial blockage of the left ureter, indicating a kidney stone. As a result of the IVP, plaintiff was given a strainer to use when urinating in order to attempt to catch the stone for examination, and he continued to take the muscle relaxant for pain.
On April 2, 1984, plaintiff returned to the clinic at which time Dr. Ochsner found him to be asymptomatic, but continued to see evidence of a stone in the x rays. On April 16, 1984 plaintiff was x-rayed once more. Dr. Ochsner found no evidence of a stone and since plaintiff was still asymptomatic, plaintiff was released for light duty work. He continued, based on his understanding of the doctor's orders, to use the strainer and take the muscle relaxant for the next six months.
On May 18, 1984 plaintiff resigned from his position with the DWF because of his inability to carry out his responsibilities due to continuing back discomfort. His resignation was precipitated by an incident with his supervisor in which he was chastised for failing to complete a job. Following his resignation he returned to his previous occupation as a commercial fisherman, shrimper, hunter and trapper.
In October 1984 plaintiff's pain had not decreased, so he went to an orthopedic surgeon. Until this visit, he believed he was suffering from a kidney stone problem. During this visit, however, Dr. Naum Klainer diagnosed a possible herniated disc. He recommended hospitalization at that time, but plaintiff was reluctant because of the cost involved and the potential disability resulting from the surgery. Eventually, however, plaintiff agreed and he was admitted for tests on May 2, 1985. He was given a myelogram, which showed a ruptured disc at the L-5, S-1, and a laminectomy was performed on May 17, 1985.
In the period between November 1984 and the surgery on May 14, 1985, Mrs. Lillian Ronquille (plaintiff's wife), Carol Rossiter, the receptionist at Dr. Klainer's office, Janice Savoie, admit clerk at West Jefferson Hospital, and her supervisor contacted defendant's worker's compensation clerk regarding the surgery. No indication was given that the claim would be disallowed, thus plaintiff underwent the hospitalization and surgery in the belief the State would pay the medical expenses under worker's compensation. However, on July 22, 1985, defendant notified plaintiff the claim was rejected. As a result, plaintiff filed a formal claim with the Office of Worker's Compensation on August 14, 1985, and on September 23, 1984 he filed suit in district court.
*894 During the trial court proceedings, defendant filed two peremptory exceptions of prescription. The first was denied. The second exception filed on the basis of the discovery of new evidence was referred to the merits. A full trial was held on February 18 and 19, 1987, after which the trial judge dismissed plaintiff's action based on the peremptory exception of prescription.
Prior to disposing of the plaintiff's allegations, we must address a motion for dismissal of plaintiff's appeal filed by defendant. In that motion it is contended the plaintiff filed the costs of appeal untimely and the trial court had no jurisdiction to extend the time for payment once the required delay for payment had elapsed.
LSA-C.C.P. art. 2126 provides for the payment of costs relative to preparation of the record on appeal. Paragraphs E and F of the article states as follows:
"E. If the appellant fails to pay the estimated costs, or the difference between the estimated costs and the actual costs, within the time specified, the trial judge, on his own motion or upon motion by the clerk or by any party, and after a hearing, shall:
(1) Enter a formal order of dismissal on the grounds of abandonment; or
(2) Grant a ten day period within which costs must be paid in full, in default of which the appeal is dismissed as abandoned.
"F. If the appellant pays the costs required by this Article, the appeal may not be dismissed because of the passage of the return day without an extension being obtained or because of an untimely lodging of the record on appeal."
In this case a motion for appeal was filed September 2, 1987. A notice of estimated costs was served on plaintiff on September 28, 1987. On December 4, 1987 the clerk of court filed a motion to dismiss the appeal for failure to pay estimated costs. As a result, the trial court issued an order for the plaintiff to show cause, on January 29, 1988, why the appeal should not be dismissed. On January 8, 1988, a revised estimate of costs was sent to plaintiff. In response, plaintiff filed a motion to reduce costs and to continue the date of the hearing on the motion to dismiss until the motion to reduce was heard. Both motions are marked "moot" by the trial judge. On January 29, 1988, defendant filed an objection to the motion to reduce the costs.
Defendant contends the article is jurisdictional and thus once the delay for payment passed, the trial court was mandated to dismiss the appeal. Contrary to defendant's position, this article is not jurisdictional, but is a procedural vehicle designed solely for the efficient administration of the court. Williams v. Aetna Ins. Co., 368 So.2d 1252 (La.App. 4 Cir.1979).
According to the language of the article, the trial court may not dismiss the appeal until after a hearing. The hearing here was never held because plaintiff apparently paid the costs before the date of the hearing. Had it been held, the trial judge could have dismissed the appeal or extended to plaintiff a 10-day period to pay the costs. That authority, coupled with the fact the issue became moot when the costs were paid, leads this court to conclude the trial court did not err in refusing to dismiss plaintiff's appeal. See: Richards v. Everett, 509 So.2d 851 (La.App. 4 Cir.1987). Consequently, defendant's motion to dismiss the appeal is hereby denied.
In his first argument, plaintiff contends the plea of prescription was improperly granted because the prescriptive period for medical expenses is 10 years. Plaintiff cites Lester v. Southern Cas. Ins. Co., 466 So.2d 25 (La.1985), to support his contention.
Prior to the decision in Lester, claims for medical expenses were barred by a one-year prescriptive period. Brown v. Travelers Insurance Company, 247 La. 7, 169 So.2d 540 (1964). In Lester the court held otherwise after analyzing the statute and concluding it did not specially provide a prescriptive period for medical expenses. Because of that deficiency the court further held the 10-year period provided in LSA-C.C. art. 3544 applied to medical expenses.
*895 Subsequent to the decision in Lester, the statute was amended to provide that all claims for medical expenses are barred unless brought within one year. Thus, the 10-year prescriptive period was only applicable from April 1, 1985, the date of the Lester decision, through January 1, 1986, the effective date of the Act. Since all of the pertinent dates in this case arose prior to April 1, 1985, the one-year prescriptive period applies to his medical expenses as well as to the wage benefits. Melancon v. Lone Star Industries Inc., 503 So.2d 631 (La.App. 4 Cir.1987), writ denied 503 So.2d 1017 (La.1987).
Next plaintiff contends the claim for benefits was not prescribed under the developing injury provision of R.S. 23:1209. In this regard he argues prescription does not commence until the injury becomes manifest. Prior to the October 1984 diagnosis of herniated disc, he asserts he believed his low pain was due to the kidney stone problem as diagnosed by the Ochsner doctors in March 1984. Since he was not aware he was suffering from a work-related injury in March when the first episode occurred or in May 1984 when he resigned, he concludes the injury did not manifest itself until October and thus prescription did not begin to run until then.
Until the claimant is aware, or should have been aware, that the injury with its resulting disability is work-related, prescription does not commence to run. Bolden v. Georgia Cas. & Sur. Co., 363 So.2d 419 (La.1978); Brettillo v. J. Ray McDermott & Co., 375 So.2d 763 (La.App. 4 Cir.1979), writ denied, 378 So.2d 437 (La. 1979); Cedotal v. Wausau Ins. Co., 497 So.2d 395 (La.App. 3 Cir.1986), writ denied 498 So.2d 757 (La.1986); Erwin v. Agrico Chemical Co. of Delaware, 422 So.2d 1385 (La.App. 1 Cir.1982); Puglisi v. Saia Freight Lines, 422 So.2d 1363 (La.App. 1 Cir.1982). The rule that the disability's relation to the claimant's employment must be manifest and not conjectural applies whether or not the manifestation occurs after the employee terminates his employment. Bolder, supra. Thus, when the employee's injury is misdiagnosed, involves more than one possible diagnosis or where the relation between the injury and accident are not initially known, as long as the action is brought within the two-year provision of R.S. 23:1209, the claimant will not be penalized. He will be allowed to file his claim within one year from the date he becomes aware the injury is compensable under worker's compensation. Bolden, supra; Brettillo, supra; Cedotal, supra; Erwin, supra; Puglisi, supra.
In this case the evidence shows plaintiff suffered an episode at work which necessitated medical evaluation. The fact that the incident occurred is supported by the testimony of his supervisor, Dares, who recommended plaintiff seek medical advice. The initial determination was inconclusive as to whether plaintiff's pain was caused by back strain or kidney stones. Ultimately the Ochsner physicians concluded the pain was produced by a kidney stone; although at trial the Ochsner doctors did not rule out the possibility the back was coincidentally involved as well. However, the doctors did not seem to feel plaintiff exhibited sufficient symptoms of disc involvement to require further investigation at that time, although he was given a muscle relaxant which seemed to alleviate his symptoms of pain.
Plaintiff and his wife testified plaintiff continued to suffer back discomfort from the time he was released for light duty work in April until he resigned in May 1984. He contended his resignation, which was precipitated by the incident with his supervisor, was really due to his recognition that he could no longer perform heavy labor necessary in the performance of his job. He noted that his nickname prior to his back problem was the "human dragline," and that he was often called upon to lift or carry heavy timber, lumber or other items. Plaintiff and Mrs. Ronquille further stated they believed plaintiff's pain was the result of kidney stones and it was not until Dr. Klainer diagnosed a possible herniated disc that they considered he might be entitled to worker's compensation benefits.
Although the evidence further showed plaintiff fished, shrimped, hunted and *896 trapped during the interim, no evidence was produced to indicate the herniated disc resulted from any of those activities. And Dr. Klainer concluded the disc problem was caused by plaintiff's work activities on March 20, 1987.
After reviewing the testimony and documentary evidence, we find plaintiff suffered a work-related injury on March 20, 1984, but we find plaintiff had no reason to believe his injury was compensable until Kr. Klainer's diagnosis in October 1984. Since he neither knew nor should have known prior to that date that he had a work-related injury, under Bolden and the other cases cited herein we find his claim did not prescribe and that the trial judge erred in granting the peremptory exception of prescription.
Plaintiff also contends the claim did not prescribe because plaintiff was lulled by the defendant's worker's compensation clerk into believing the medical expenses would be paid. Because of our findings above, we need not address this allegation.
The plea of prescription had been referred to the trial on the merits. Thus, a remand is unnecessary to resolve plaintiff's entitlement to compensation benefits since a complete record is before us for review. See: Bolden, supra.
In this respect, plaintiff argues he is entitled to $180.46 per week, but he fails to assert the legal basis on which he calculates that figure. Presumably he is contending he is totally and permanently disabled under LSA-R.S. 23:1221(2). We do not find, however, that the facts support a finding of either temporary or permanent total disability since plaintiff is admittedly able to work and in fact has resumed his previous means of earning a living by fishing, shrimping, hunting and trapping.
Under the 1983 amendment to LSA-R.S. 23:1221(3), a worker not totally disabled is entitled to compensation only if he is unable to earn 90% or more of the wages he was earning at the time of the injury. Subparagraph (a) of the statute provides the amount the claimant is entitled to receive shall be 74% of the difference between 90% of the average monthly wages at time of injury, and the average monthly wages earned (or which the employee is able to earn) in any employment or self-employment, whether or not the same or similar occupation or whether or not an occupation for which the employee was particularly fitted. If the employee is not earning 90% of his previous wages, under Subparagraph (b) the amount determined to be the wages the employee is able to earn cannot be less than sums actually received by the employee, including, but not limited to, odd-lot employment, sheltered employment or employment while working in pain. Where the employee is not engaged in employment as described in Subparagraph (b) or is earning less than the amount he is able to earn, Subparagraph (c)(i) provides the earnable wages shall not be less than the sum the employee would have earned in any employment which he was physically able to perform and (1) which was offered by the employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region.
In plaintiff's case he earned $1,173 per month with DWF. His average gross earnings from fishing, etc., in the years 1984, 1985 and 1986 amounted to $10,068.29. His weekly wage earned with DWF ws $270.70 ($1,173 times 12 divided by 52) and his weekly wage after leaving DWF equaled $193.62 ($10,068.29 divided by 52). Since that figure is less than 90% of his weekly wage earned with DWF he is entitled to the supplemental benefits of R.S. 23:1221(3). Under the statute in effect at the time of this claim he is entitled to 74% of the difference between 90% of the average monthly wages earned at the time of injury and the average monthly wages he now earns: $37.02 per week (or $160.42 per month).
In regard to Subparagraph (i) of R.S. 23:1221(3)(c), defendant attempted at trial to show jobs were available to plaintiff during one week of 1987 which plaintiff could perform given the restrictions imposed by his back injury and surgery. However, the evidence, elicited through the *897 testimony of defendant's rehabilitation counselor, failed to include salaries, without which it is impossible to determine whether those jobs paid 90% or more of plaintiff's employment with DWF as required by the statute. Consequently, defendant failed to rebut plaintiff's entitlement to benefits. See: Culotta v. The Great Atlantic and Pacific Tea Company, 524 So.2d 259 (La.App. 5 Cir.1988).
Accordingly, the judgment of the trial court is hereby reversed; further
It is ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Norman Ronquille, and against defendant, State of Louisiana, Department of Wildlife and Fisheries, for (1) medical expenses attributable to plaintiff's work-related injury in the amount of $11,176.69; and (2) supplemental wage benefits to be paid at the rate of $37.02 per week according to the provisions of LSA-R.S. 23:1221(3) beginning from May 18, 1984 and with interest on each weekly payment from May 18, 1984 until judgment becomes final.
Costs of the appeal are to be paid by appellee.
REVERSED AND RENDERED.