833 So.2d 1088 (2002)
Delores B. GADDY, Plaintiff-Appellant,
v.
CADDO PARISH SCHOOL BOARD, Defendant-Appellee.
No. 36,583-WCA.
Court of Appeal of Louisiana, Second Circuit.
December 11, 2002.
*1089 Weems, Schimpf, Gilsoul, Haines & Carmouche, by Kenneth P. Haines, Brian D. Landry, Shreveport, for Appellant.
Zelda W. Tucker, Shreveport, for Appellee.
Before CARAWAY, PEATROSS and KOSTELKA, JJ.
KOSTELKA, J.
Dolores B. Gaddy ("Gaddy") appeals the judgment of the Workers' Compensation Judge (the "WCJ") which sustained the exception of prescription in favor of her employer, the Caddo Parish School Board (the "School Board"). For the reasons set forth, we affirm.

FACTS
On February 8, 1996, Gaddy was working in the course and scope of her employment as a math teacher at Captain Shreve High School in Shreveport, Louisiana. That day, she was assigned to hall duty and was knocked to the floor by a security guard who rounded a corner suddenly on his way to a disturbance. When Gaddy fell to the floor, she struck the left side of her face which subsequently began to swell. She also had soreness on the left side of her body and a swollen thumb on her right hand.
The next day, she was treated by Dr. Michael Fleming ("Dr.Fleming") who x-rayed her neck and back and prescribed medication for pain and reduction of swelling. In connection with her injury, the School Board made payments on Gaddy's medical expenses without objection on February 28, 1996, March 5, 1996, September 6, 1996, October 14, 1996, October 25, 1996, November 12, 1996, and November 20, 1996. Subsequently, in January, 2001, Gaddy returned to Dr. Fleming for treatment of symptoms which he related to her 1996 workplace injury. Dr. Fleming recommended an MRI of the cervical spine to rule out cervical disk disease. That MRI showed significant arthritic/degenerative change with bulging disks. Dr. Fleming *1090 then referred Gaddy to Dr. David Cavanaugh ("Dr.Cavanaugh"), a neurosurgeon, who opined that the MRI showed cervical spondylosis, which represented degenerative disk disease changes and spurring at multiple levels in the neck. Dr. Cavanaugh stated that it was "quite clear" from the history he obtained from Gaddy that her current symptoms were a result of her work injury, and he recommended surgery.
After November, 1996 the School Board received no other bills or notice of any medical expenses related to Gaddy until February, 2001, when the School Board's risk management office was contacted by Dr. Cavanaugh's office requesting approval for Gaddy to be seen for a work-related injury. On March 2, 2001, the School Board wrote to Gaddy denying her claim for medical benefits based on the period of time which had elapsed since her last claim.
Gaddy, appearing pro se, filed a petition for the payment of medical expenses, to which the school board filed a peremptory exception of prescription. At the hearing on the School Board's exception, and after hearing the testimony and reviewing the evidence presented by the parties, the WCJ sustained the exception of prescription and rendered judgment dismissing Gaddy's claim. This appeal by Gaddy ensued.

DISCUSSION
On appeal, Gaddy argues that the WCJ erred in granting the School Board's exception of prescription. She contends that although her claim for medical benefits appears to have prescribed on its face, the tolling of prescription was interrupted due to lack of knowledge of her ailment and its relatedness to her 1996 on-the-job injury.
Here, medical benefits had been paid to Gaddy as a result of her on-the-job injury and the last benefit was paid in November, 1996. The School Board maintains that because three years elapsed between Gaddy's last claim in November of 1996, and her most recent claim in 2001, the School Board is not liable for payments pursuant to La. R.S. 23:1209(C), which states as follows:
All claims for medical benefits payable pursuant to R.S. 23:1203 shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed with the office as provided in this Chapter. Where such payments have been made in any case, this limitation shall not take effect until the expiration of three years from the time of making the last payment of medical benefits. (Emphasis added).
When a workers' compensation claim to recover benefits has prescribed on its face, the claimant has the burden of showing that prescription has been interrupted in some manner. Brown v. Caddo Career Center, 28,111 (La.App.2d Cir.02/28/96), 669 So.2d 712, writ denied, 96-1042 (La.05/31/96), 674 So.2d 262; Lynn v. Berg Mechanical, Inc., 582 So.2d 902 (La.App. 2d Cir.1991). The WCJ noted that the last medical benefit paid to Gaddy had been in November of 1996 and that the medical benefits claimed in 2001 were for the same 1996 injury to her neck. Further, the WCJ recognized that pursuant to La. R.S. 23:1209(C), Gaddy's claim had prescribed on its face, and that the burden was on Gaddy "to show that there is some exception which would warrant this Court to find that her claim has not prescribed." Having failed to do such, and considering that more than three years had elapsed without Gaddy making a claim in connection with her on-the-job injury, the WCJ determined that Gaddy's claim *1091 had prescribed. On appeal, Gaddy argues that the WCJ erred because prescription of her claim was interrupted under the legal doctrine of contra non valentem agere nulla currit praescriptio ("contra non valentem").
Initially, we note that at the trial of the matter, Gaddy, who had no legal counsel at the proceedings below, did not object to the School Board's exception of prescription on the grounds of contra non valentem. The record reflects two arguments advanced by Gaddyher lack of knowledge of the three-year prescriptive period set out in La. R.S. 23:1209(C) and that the medical treatment for which she was claiming medical benefits was related directly to her on-the-job injury in 1996. Because she failed to present the defense of contra non valentem as to the School Board's exception of prescription in the proceedings below, she is, therefore, precluded from raising it for the first time on appeal. Matthews v. Pete Mercer Const., 33,085 (La.App.2d Cir.04/07/00), 758 So.2d 379, writ denied, XXXX-XXXX (La.06/16/00), 764 So.2d 965; Risinger v. State Farm Mut. Auto. Ins. Co., 29,023 (La.App.2d Cir.06/18/97), 711 So.2d 293. On this basis alone, her appeal fails.
Nor do we place any significance on the fact that Gaddy was a pro se litigant at the trial level, and as such, grant her extra consideration now on appeal. Although we acknowledge that the technical rules of procedure are relaxed in the workers' compensation court,[1] a pro se litigant assumes all responsibility for her own inadequacies and lack of knowledge of procedural and substantive laws. Ledbetter v. Wheeler, 31,357 (La.App.2d Cir.12/09/98), 722 So.2d 382; Dixon v. Shuford, 28,138 (La.App.2d Cir.04/03/96), 671 So.2d 1213. It was Gaddy's responsibility as a pro se litigant to make sure her interests were protected. She was aware that the School Board considered her claim prescribed, which they had claimed not only in a formal exception to the court, but in correspondence to Gaddy. If she was unprepared or unable to provide an objection to the School Board's exception, Gaddy (a high school teacher, presumably college-educated) was sophisticated enough to have considered engaging legal counsel, which she did for her appeal. Nor can we say that the WCJ erred in failing to notice and apply the defense of contra non valentem on her own accord, as Gaddy suggests she should have done. To do so would require trial courts to, in effect, act as counsel for the pro se litigants before it, an unreasonable burden to impose and unfair to opposing parties.
Even if, arguendo, Gaddy had the right to assert such a defense on appeal for the first time, her assignment of error is without merit. Although this Court has recognized four factual situations in which the doctrine of contra non valentem applies so as to prevent the running of liberative prescription, Gaddy only looks to one of those factors, arguing that contra non valentem applies to prevent the running of prescription where the cause of action was neither known nor reasonably knowable by the plaintiff, even though the plaintiff's ignorance is not induced by the defendant. See, Netherland v. Ethicon, Inc., 35,229 (La.App.2d Cir.04/05/02), 813 So.2d 1254, writ denied, XXXX-XXXX (La.06/21/02), 819 So.2d 339; Renfroe v. State, Dept. of Transp. and Dev., XXXX-XXXX (La.02/26/02), 809 So.2d 947. Actual knowledge or constructive knowledge of a cause of action has been defined as the time "[w]hen a party has sufficient information to incite *1092 curiosity, to excite attention or to put a reasonably minded person on guard and call for inquiry...." Netherland, supra.
Specifically, Gaddy claims that contra non valentem should be applied to suspend prescription in this case, because her claim was not known to her until March, 2001, when she was conclusively diagnosed with cervical disk disease. Further, she asserts that she did not know and could not have reasonably known before 2001 that her medical condition related back to the workplace injury in 1996. We disagree.
Gaddy was first treated by Dr. Fleming the day after she was injured. Apparently, Gaddy had been a long-time patient of Dr. Fleming even before her injury. Although no diagnosis was made at the time, Dr. Fleming noticed tenderness and swelling. In a report dated October 12, 1996, Dr. Fleming notes that he had seen Gaddy back in his office on several occasions since the initial visit following the injury. In that report, he stated that as of her August 28, 1996 visit, Gaddy had occasional complaints of discomfort in her neck, radiating down into her arm. He further opined at the time that Gaddy was "developing cervical disc disease" and prescribed medication and physical therapy. In connection with her treatment for her injury, Gaddy submitted various claims, the last of which was paid on November 20, 1996.
The next report from Dr. Fleming is dated February 15, 2001. In that report Dr. Fleming refers to the October 12, 1996 report, stating that at that time, "Gaddy went through several months of physical therapy and has had exacerbations of problems with neck pain off and on...." He continues that "[o]n a visit of 11-10-98 she complained of problems with neck pain. My examination at that time revealed an exacerbation." He states that he saw Gaddy again on January 9, 2001, when she was complaining of severe pain in her neck radiating down her arm. He recommended at that time an MRI of the cervical spine "to rule out cervical disk disease." As a result of the MRI, he referred her to Dr. David Cavanaugh who concluded she had severe cervical degenerative disease that would probably require surgery. Finally, Dr. Cavanaugh concluded that the condition was related to her 1996 on-the-job injury.
Whereas, the medical reports are all clear that the symptoms complained of by Gaddy in 2001 were related to her on-the-job injury which occurred in February, 1996, that is not the critical issue, nor, in fact, do we even question the connection. Under the doctrine of contra non valentem, we must determine whether Gaddy knew or reasonably could have known of her cause of action during the period in question. Based on the record before us, we conclude Gaddy knew, and if not, she reasonably should have known of her claim against the School Board prior to making an additional claim for medical benefits in 2001.
Gaddy's medical history and evidence tend to show that she was aware of her claim against the School Board throughout the time period before 2001. In 1996, soon after her injury occurred, Dr. Fleming opined that she was developing cervical disk disease, for which she continued to seek treatment from him. She filed several claims for benefits up until November 20, 1996. Then, a period of time elapsed until she sought treatment from Dr. Fleming againthis time in November of 1998. At that point in time, Dr. Fleming's medical records indicate that his "examination at that time revealed an exacerbation." (Emphasis added). Dr. Fleming's description of Gaddy's symptoms shows Gaddy's knowledge of her ongoing condition as she related it to Dr. Fleming, because an "exacerbation" implies a continuing but worsening *1093 of Gaddy's original ailment.[2] Significantly, Gaddy was experiencing the same symptoms throughout this time periodnamely, neck pain. Moreover, the emphasis argued by Gaddy on the need for the MRI to "rule out cervical disk disease" is misplaced. The critical question is what Gaddy knew or should have known during the period of time between her last claim in November, 1996 until Dr. Fleming's report in 2001. Dr. Fleming's statement was not a new diagnosis, but related back to his original diagnosis made in 1996. Additionally, in Dr. Cavanaugh's March 13, 2001 letter to the School Board, he states, "I saw [Gaddy] on consultation from Dr. Fleming on 2/8/01, and then follow up on 3/8/01. Her history she gave me was quite clear that she related her problems to an injury 4 years ago, ..."
Gaddy argues on appeal that she was unaware of her need for treatment, and, thus, could not bring a claim for medical benefits. However, the evidence indicates otherwise. At the trial of the exception, Gaddy explained that regarding her November, 1998 visit, she did not file a claim, because it was "not an exorbitant amount of money, ..." However, most tellingly, she elaborated that had she known of the rule regarding the three year prescriptive period, she would have filed the claim. This reflects her knowledge of the relatedness of her claim to the 1996 on-the-job injury, but she made the conscious decision not to file the claim, only because it was not a large amount of money. Obviously, she was not unaware of her need for treatment but made a choice not to be reimbursed for that treatment, only because it was not worth it to her financially. Had Gaddy filed this claim at the time, she would have preserved her rights to claim medical benefits further into the future.
Additionally, in Gaddy's Disputed Claim for Compensation, she stated that "[a]lthough there was a(3) three year lapse in Workers' Compensation payments, there was not a three (3) year lapse in my treatment." (Emphasis added). Thus, Gaddy concedes that she continued to be treated for the on-the-job injury and that she recognized her cause of action. Further, in a statement attached to her Disputed Claim for Compensation, Gaddy also acknowledges that in 1996, Dr. Fleming diagnosed her injury as cervical disk disorder with myelopathy, indicating her knowledge of the continuing ailment as a result of her job injury.
Finally, at the trial level, the only lack of knowledge argued by Gaddy was her ignorance of the three-year prescriptive period provided in La. R.S. 23:1209(C). However, Gaddy's lack of knowledge of the prescriptive period, which she repeatedly argued throughout the trial proceeding, is not equivalent to a lack of knowledge of her disk disease during the period of time between November, 1996 and February, 2001.
Therefore, under the facts before us, we determine that Gaddy had sufficient knowledge, or at the least, she could have known through reasonable diligence, of her claim against the School Board, and, thus, prescription was not interrupted under the theory of contra non valentem.

CONCLUSION
For the reasons stated, the judgment rendered by the WCJ in favor of the Caddo Parish School Board is hereby affirmed, *1094 with the costs of this appeal assessed to Dolores Gaddy.
AFFIRMED.
NOTES
[1] See, La. R.S. 23:1317(A), which states, "The workers' compensation judge shall not be bound by technical rules of evidence or procedure other than as herein provided, ..."
[2] "Exacerbation" is defined by Webster's New Universal Unabridged Dictionary (Second Edition) as an "intensification or aggravation, as of a disease, pain, etc."