852 So.2d 492 (2003)
Russell C. IVERSTINE
v.
ALBEMARLE CORP. and Travelers Insurance.
No. 2002 CA 2555.
Court of Appeal of Louisiana, First Circuit.
July 2, 2003.
Rehearing Denied August 13, 2003.
*494 Randy P. Zinna, Baton Rouge, Counsel for Plaintiff/Appellant Russell Iverstine.
J. Alan Jordan, Baton Rouge, Counsel for Defendants/Appellees Albemarle Corporation and Travelers Indemnity Company.
Before: KUHN, DOWNING and GAIDRY, JJ.
GAIDRY, J.
In this workers' compensation case, the plaintiff-appellant, Russell C. Iverstine, appeals a judgment rendered by the Office of Workers' Compensation (OWC) in favor of the defendants-appellees, Albemarle Corporation and Travelers Indemnity Company, sustaining their peremptory exception of prescription.[1] For the following reasons, we affirm the judgment of the OWC.

FACTS AND PROCEDURAL HISTORY
Plaintiff filed a disputed claim for compensation on September 7, 2001, claiming a work-related injury to his back and neck on June 6, 2000, while carrying two 55pound aluminum cylinders. He further asserted that the accident was reported to his supervisor on July 17, 2000. Defendants, his employer and its workers' compensation insurer, filed an exception of prescription, contending that plaintiff's claim, filed fifteen months after his alleged injury, was prescribed pursuant to La. R.S. 23:1209(A). Defendants further argued that since plaintiff's claim was prescribed on its face, the burden of proof shifted to him to demonstrate that prescription had been interrupted in some manner.
Plaintiff responded to the exception of prescription, arguing that his claim was not prescribed because he did not realize that his back problems were related to his June 6, 2000 on-the-job injury until April 23, 2001.
Defendants' exception of prescription was heard on June 21, 2002. The parties submitted the matter on the memoranda that had been filed, along with the deposition of plaintiff transmitted to the OWC judge on June 19, 2002.[2] These materials demonstrated that Russell C. Iverstine was a 54-year-old employee of Albemarle Corporation when he was involved in an on-the-job accident on June 6, 2000. On that day, he was working with John Borne, who was assigned to light duty because of *495 a recent surgery. Mr. Iverstine was carrying two 55-pound aluminum alkyl cylinders to a loading dock, one in each hand. He described the accident in the following terms in his deposition:
... [I]t was like a funnybone type of thing: you know, tingling in the arms, numbness, basically like paralysis, just lost all control over my arms and hands, you know. What I did, I dropped the cylinders on the ground, as a matter of fact, right past the safety shower.
There were no witnesses to this incident. Afterwards, plaintiff told Mr. Borne what had occurred. He continued to work that day, but did not do any further loading or lifting. Mr. Borne, who had been on light duty, then assumed Mr. Iverstine's heavy work. Plaintiff explained in his deposition testimony:
... [W]hen it happened, I knew, I knew something had happened. I said, something's wrong here. And it was a matter of time, like a week to ten days, before I started having certain symptoms. So, no. You know, I was a little leery about what happened. It's like a funny thing, you know. You know, we more or less reversed roles there after that. (Our emphasis.)
Plaintiff insisted that he had no back complaints before the June 6, 2000 incident. After the June 6, 2000 incident, he never resumed his previous heavy work activities. Moreover, he testified that soon after he experienced more serious complaints:
... [A]fter about a week to ten days, I started having certain symptoms, meaning tingling all over the side of my face and neck, weakness, you know, in my arms and my legs, my limbs. You know, you start, like you walk with a club foot, you know, like your foot is dragging behind. Well, these were the initial symptoms that happened after the incident.... I'd be sitting at my desk, and all of a sudden, I could feel tingling. I said, there's something wrong. Something was going on with my body.
Plaintiff claimed that he was not sure that his continuing complaints were related to the June 6 incident, but admitted that he thought about it. When he consulted the company nurse, he told her he was not sure whether his difficulties were employment-related. He went to a local emergency room on July 14, 2000, complaining of the same type of symptoms he experienced immediately after the incident and in the weeks following it. According to plaintiff, he thought he might perhaps have had a stroke. However, he was never diagnosed as having had a stroke. The emergency room doctor suggested that he see his primary care physician for follow-up evaluation. When he did so, his primary care physician prescribed additional medication for a pre-existing high blood pressure problem and recommended a nutritional consultation, which plaintiff concluded was unnecessary and did not obtain. There is no competent evidence in the record to suggest that the high blood pressure treatment or nutritional recommendations were in any way prompted by plaintiff's complaints of tingling in his extremities and clubfoot symptoms. There is no evidence that any actual diagnosis was rendered at that time as to the cause of these complaints.
Plaintiff failed to give any of the physicians who were treating him a history of his work-related injury, even though he admittedly entertained its possible relationship to his symptoms. Significantly, only three days after his visit to the emergency room, he reported the June 6, 2000 accident to his supervisor. Thus, the record clearly suggests that at least as of that date, plaintiff associated his medical condition *496 and the onset of his symptoms with the June 6, 2000 accident.
When plaintiff's complaints worsened, he eventually sought the opinion of a neurologist. He was diagnosed with a cervical disc problem and underwent neck surgery in October 2000. He still did not disclose to his doctors that he had suffered a job-related accident. During his three-month recovery from surgery, plaintiff received disability benefits through an insurance policy provided by his employer.
Plaintiff returned to work after surgery in January 2001, but did not resume his normal, pre-accident duties. On April 23, 2001, he had a consultation with his surgeon and his employer's physician. For the first time, plaintiff reported the June 6, 2000 incident to those physicians. He claimed that although it had been his intention to discuss this earlier, he just had not done so. He further claimed that he was only told at that time that the June 6, 2000 incident might have caused his cervical problems. After this consultation, plaintiff did not return to work and was placed on long-term disability status. He also qualified for Social Security disability payments.
In opposition to defendants' exception of prescription, Mr. Iverstine argued that prescription did not commence until April 23, 2001, when his physician informed him that the June 6, 2000 accident might have caused his cervical problems. The OWC judge rejected plaintiff's argument that prescription was for that reason interrupted until April 23, 2001. His oral reasons for judgment reflect his factual findings:
Mr. Iverstine alleges that on June 6, 2000 he sustained an injury in the course and scope of his employment. The 1008 was filed on September 7, 2001, which is some fifteen months after the accident. On the face of the petition the claim is prescribed, therefore, Mr. Iverstine bears the burden of showing that there is a valid reason why prescription should not have run from the time of the accident.
After reading the deposition of Mr. Iverstine and reading the arguments of counsel it's obvious to me that prescription has run in this case. Mr. Iverstine testified that he was disabled immediately after the accident. He took himself off his regular duties and moved to light duty. While it is true that his exact situation was not diagnosed until later, the simple fact of the matter is that Mr. Iverstine knew he was injured on the day of his alleged accident. He immediately felt that he was disabled and prescription began to run from that time. It does not take a diagnosis of a doctor to allow prescription to run when the person has knowledge that an accident has occurred and an injury as a result of that accident.
So because prescription began to run from the date of the accident I don't think Mr. Iverstine has overcome his burden and, therefore, the exception of prescription is granted.
The judgment in conformity with the OWC judge's ruling was signed on June 21, 2002. On appeal, plaintiff assigns a single assignment of error for our review. He contends the OWC judge erred in granting defendants' exception of prescription.

APPLICABLE LAW AND DISCUSSION
In a workers' compensation case, as in other civil cases, the appellate court's review of factual findings is governed by the manifest error or clearly wrong standard. Pertuis v. Architectural Fabrications, Inc., 01-2684, p. 6 (La.App. 1st Cir.12/20/02), 836 So.2d 450, 453. The two-part test for the appellate review of a *497 factual finding is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record further establishes that the finding is not manifestly erroneous. Thus, if there is no reasonable factual basis in the record for the trial court's finding, no additional inquiry is necessary. However, if a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. Stobart v. State, through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993); Mitchell v. Terrebonne Parish School Board, 02-1021, pp. 3-4 (La.App. 1st Cir.4/2/03), 843 So.2d 531, 532-33.
La. R.S. 23:1209(A) addresses the prescriptive period for workers' compensation claims, and provides, in pertinent part:
In case of personal injury, ... all claims for payments shall be forever barred unless within one year after the accident ... the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed as provided in Subsection B of this Section and [footnote omitted] in this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of benefits payable pursuant to R.S. 23:1221(3) this limitation shall not take effect until three years from the time of making the last payment of benefits pursuant to R.S 23:1221(1), (2), (3), or (4). Also, when the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident. (Our emphasis.)
Thus, under La. R.S. 23:1209(A), claims are barred unless filed (1) within one year from the date of the accident; (2) within one year from the last compensation payment for total disability or within three years from the last payment for partial disability; or (3) within one year from the time the injury develops if not immediately manifested, but, in any event, no more than two years after the accident. Howard v. Trelles, 95-0227, p. 4 (La.App. 1st Cir.2/23/96), 669 So.2d 605, 607, writ denied, 96-0712 (La.5/3/96), 672 So.2d 690. Prescription statutes are construed in favor of maintaining rather than barring actions. Howard, 95-0227 at p. 4, 669 So.2d at 607.
A party pleading prescription generally has the burden of proving it. However, when a suit has prescribed on its face, the claimant has the burden of proving that prescription was interrupted in some manner. Mitchell, 02-1021 at p. 5, 843 So.2d at 533. In this case, plaintiff's claim was filed on September 7, 2001, more than one year after the date of his alleged June 6, 2000 on-the-job injury.[3] Thus, it was prescribed on its face unless plaintiff established that prescription was interrupted.
The only argument urged in this case to support the claim that the OWC judge committed manifest error is that plaintiff did not understand that his disability was *498 work-related until April 23, 2001, because his physical complaints were misdiagnosed until that time.[4] Under the particular facts and circumstances of this case, we find no error in the OWC's findings.[5]
Plaintiff is correct in pointing out that the jurisprudence has established an exception to the generally applicable one-year prescriptive period, such that prescription does not commence to run until a claimant is aware, or should have been aware, that the injury with its resulting disability is work-related. Bolden v. Georgia Casualty & Surety Company, 363 So.2d 419, 422 (La.1978). Actual knowledge or constructive knowledge of a cause of action has been defined as the time when a party has sufficient information to incite curiosity, to excite attention, or to put a reasonably-minded person on guard and to call for inquiry. Gaddy v. Caddo Parish School Board, 36,583, p. 5 (La.App. 2nd Cir.12/11/02), 833 So.2d 1088, 1091.
But plaintiff is incorrect in asserting that prescription is interrupted until such time that a physician advises that a disabling condition is work-related. It is the information and circumstances reasonably known to the plaintiff, not a physician's medical diagnosis, that triggers the running of prescription. Where a claimant is aware that he can no longer perform his customary job duties, knows that he has been involved in a work-related accident resulting in injury, and has reported the disabling accident to his supervisor, disability may be manifest and prescription can commence to run long before a physician formally pronounces a work-related disability. Livingston v. Triple-V Farms, 502 So.2d 173, 175 (La.App. 3rd Cir.1987). Prescription is not interrupted where a claimant is aware of a traumatic injury at the time of the accident but delays securing a proper medical diagnosis of the cause of the disability. Bolden, 363 So.2d at 422.
After a thorough review of the record, we agree with the OWC judge that plaintiff's failure to file a timely claim was not excused because he did not obtain an immediate diagnosis from his doctors that he had sustained a work-related injury. Plaintiff did not even advise his physicians of the work-related incident until April 23, 2001. Yet plaintiff was well aware of the sudden onset of his symptoms on June 6, 2000.[6] He reported the incident to his coworker and traded work assignments with him because he could no longer perform *499 his normal duties. He also reported the June 6, 2000 accident to his supervisor in July 2000. The trial court found that plaintiff's injuries were manifest on the date of the accident, and that he was aware of his disability on that date. This finding of fact may not be disturbed on appeal unless it is clearly wrong. Lee v. East Baton Rouge Parish School Board, 623 So.2d 150, 155 (La.App. 1st Cir.1993), writ denied, 627 So.2d 658 (La.1993). We cannot so hold here.
Plaintiff's reliance on Ronquille v. State, Department of Wildlife and Fisheries, 532 So.2d 891, 895-896 (La.App. 5th Cir.1988), is misplaced. In that case, the employee had an episode of back pain at work and was sent to a physician for evaluation. He was diagnosed as having a kidney stone, which explained his back pain. That diagnosis proved correct. Since it was determined that he had a kidney stone, a condition unrelated to his work, the employee did not then realize that he was also suffering from back pain related to his employment. Ronquille, 532 So.2d at 893. In this case, contrary to his assertions, plaintiff was never misdiagnosed. He simply failed to mention the history of the June 6, 2000 accident to his physicians, and they therefore could not immediately determine the etiology or precipitating cause of his symptoms. He was diagnosed with a cervical disc problem, which necessitated surgery in October 2000. Unlike the situation in Ronquille, there is no evidence in the record to support the claim that plaintiff's job-related symptoms were misdiagnosed or that any of his physicians ever advised him that the tingling in his extremities and dragging of his foot were caused by a noncompensable physical condition.[7] It is noteworthy that plaintiff did not offer, in opposition to the exception of prescription, any testimony or affidavits of his treating physicians or his medical records in support of his contentions.
Plaintiff bore the burden of proving that prescription was interrupted. Based on our review of the record, we cannot say that the OWC judge was clearly wrong in finding that plaintiff did not meet that burden and that his claim for compensation benefits was prescribed. In summary, the record supports the findings that plaintiff knew he suffered a work-related injury on June 6, 2000, and he knew that he could not thereafter perform his customary work. He entertained the idea that the June 6, 2000 incident caused his medical problems, immediately reported the incident to his coworker, reported the accident to his supervisor on July 17, 2000, and failed to timely assert a compensation claim long after his physicians' differential diagnosis had definitively ruled out a stroke. In view of the facts and circumstances demonstrated in the record, the OWC judge was free to reject claimant's self-serving testimony that he thought he might have had a stroke and therefore did not have a reasonable basis to suspect a causative relationship between his disability and the accident until the discussion with his physicians in April 2001. In our view, even after according a liberal interpretation to the evidence in favor of plaintiff, there was clearly a reasonable factual basis for the ruling of the OWC judge, and his findings cannot be considered manifestly erroneous.
Although the OWC judgment states only that "the exception of prescription is granted," under the facts of this case, it clearly effects a dismissal of plaintiff's claim. Accordingly, we amend and clarify the judgment to expressly dismiss plaintiff's claim for workers' compensation benefits, *500 which allegedly arose out of his June 6, 2000 injury. See La. C.C.P. art. 2164; Pertuis v. Architectural Fabrications, Inc., 2001-2684 at p. 7, 836 So.2d at 453.

DECREE
For the foregoing reasons, plaintiff's workers' compensation claim is dismissed. With this modification, the judgment of the OWC in favor of Albemarle Corporation and Travelers Indemnity Insurance is hereby affirmed. All costs of this appeal are assessed to plaintiff, Russell C. Iverstine.
AMENDED, AND AS AMENDED, AFFIRMED.
KUHN, Judge, dissenting.
The OWC's ruling should be reversed. Claimant filed his claim within one year of the time that his "injury develop[ed]" as contemplated by La. R.S. 23:1209A.[1]Sevin v. Schwegmann, 94-1859 (La.4/10/95), 652 So.2d 1323. Although claimant knew he was injured immediately after the June 6, 2001 accident, his injury did not fully develop until months later. Claimant's deposition testimony establishes that although he had informally began performing light-duty work after the accident, he continued to work through September 27, 2000. During that time period, he did not formally request a change in his job duties. In the next few months, claimant's symptoms worsened. After consulting with a surgeon on September 27, 2000, claimant underwent surgery on October 3, 2000. Following the surgery, Albemarle paid claimant disability benefits for ten weeks at full pay and sixteen weeks at half-pay.
In Boudreaux v. Angelo Iafrate Const., 02-0992 (La.App. 1 Cir. 2/14/03), 848 So.2d 3, this court addressed the concept of when a developing injury becomes disabling to a claimant as follows:
The jurisprudence offers guidelines for establishing when a developing injury has reached the disabling point for purposes of applicability of this exception to the one-year prescriptive period. In the case of the retained employee who continues to work with symptoms which might have been held to be disabling (if litigated), but which did not become manifestly disabling to the employee until he was physically forced to quit his work, the disability does not become manifest or "develop" until that date, because to select an earlier date would be dealing in conjecture. Bolden v. Georgia Casualty and Surety Company, 363 So.2d 419, 421-422 (La.1978). In cases of this nature, the policy is to encourage rather than penalize an employee who continues working despite a work-related medical condition, which is painful, but not then disabling. Sevin v. Schwegmann Giant Supermarkets, Inc., 652 So.2d at 1326.
In the present case, the trial court focused on when claimant knew he was hurt. That is not the test under the Sevin analysis. The analysis for the developing injury exception focuses on when the injury fully develops into a disabling condition. The trial court found that because claimant knew he was injured on the date of the alleged accident, prescription began to run on that date. This reasoning demonstrates that the trial court committed legal *501 error by not applying the provisions of La. R.S. 23:1209 and the concept of a "developing injury" when considering whether the claim had prescribed.
The majority suggests that the "developing injury" theory cannot be considered because claimant did not assert this argument in the proceedings below. This reasoning is faulty because the "theory of the case" doctrine has been abolished in Louisiana. See La. C.C.P. art. 862, Comment b. The statutory law, as interpreted by the jurisprudence, should be applied to the established facts regardless of whether claimant advances the appropriate or best legal argument.
Additionally, the majority ignores the well-established principle that workers' compensation laws are to be liberally interpreted in favor of protecting workers from the economic burden of work-related injuries. Sevin, 652 So.2d at 1325. The majority's resolution serves to encourage needless litigation by requiring an injured employee, who is not yet disabled, to assert his claim within one year of the accident in order to preserve his cause of action. Sevin, 652 So.2d at 1326.
Claimant's deposition testimony establishes that he continued to work through September 27, 2000; he continued to work until his disability "developed" and required surgery. Thus, his claim, which was filed on September 7, 2001, was timely. The claim was filed within one year of the time that the injury developed and within two years of the date of the accident. La. R.S. 23:1209A.
KUHN, J., dissents and assigns reasons.
NOTES
[1] The OWC judge assigned to this case was the Honorable Anthony P. Palermo, District 5. Although plaintiff's petition names "Travelers Insurance" [sic ] as a defendant, Travelers Indemnity Company answered the plaintiff's claim and filed an exception of prescription. Plaintiff does not dispute that Travelers Indemnity Company is the actual workers' compensation carrier insuring his employer.
[2] While the plaintiff's deposition was not entered into evidence in open court, the record indicates that the opposing parties agreed to its evidentiary submission to the OWC judge by mail. The OWC is not bound by technical rules of evidence or procedure. La. R.S. 23:1317.
[3] For purposes of consideration of defendants' exception of prescription, we assume the truth of the allegations of plaintiff's petition, including the allegation that his injury was caused by a work-related accident.
[4] It is undisputed that plaintiff received no workers' compensation payments in connection with the alleged accident.
[5] Plaintiff does not argue that his case falls within the special prescriptive period for "developing injuries" established in the last sentence of La. R.S. 23:1209A, which creates an exception to the normal one-year period of prescription, such that prescription is interrupted until the time the injury "develops." As used in the statute, the phrase "development of the injury" connotes the time when disability to perform work becomes manifest either to the injured employee or his employer. Barker v. Aetna Cas. & Sur. Co., 380 So.2d 178, 179 (La.App. 1st Cir.1979), writ denied, 383 So.2d 25 (La.1980). Plaintiff in this case concedes that he had an injury that was immediately manifest, that it immediately affected his ability to perform his normal work assignments, and that he reported the accident to his employer on July 17, 2000. Nor did plaintiff assert any other basis for an interruption of prescription in the proceedings below. For those reasons, any additional grounds for asserting an interruption of prescription cannot be considered on appeal. See Gaddy v. Caddo Parish School Board, 36,583, p. 4 (La.App.2d Cir.12/11/02), 833 So.2d 1088, 1091.
[6] Indeed, the extremely hazardous and potentially explosive nature of the cylinders he dropped due to onset of his symptoms should have dramatically reinforced his recollection of the accident and its association with his symptoms.
[7] See also Gaddy, 36,583 at pp. 5-10, 833 So.2d at 1092-1094; Puglisi v. Saia Motor Freight Lines, 422 So.2d 1363, 1365 (La.App. 1st Cir.1982).
[1] La. R.S. 23:1209A provides in pertinent part:

[W]hen the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident.